**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Robert Glynn CHAMBERS, Defendant–Appellant.**

**No. 90–8061.**

United States Court of Appeals, Fifth Circuit.

Jan. 14, 1991.

Rehearing Denied Feb. 21, 1991.

---

Arvel R. Ponton, III, El Paso, Tex., Roddy L. Harrison, Pecos, Tex., for defendant-appellant.

Michael R. Hardy, LeRoy M. Jahn, Asst. U.S. Attys., Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before GARWOOD and WIENER, Circuit Judges, and VELA [1], District Judge.

GARWOOD, Circuit Judge:

Defendant-appellant Robert Glynn Chambers (Chambers) appeals his conviction for knowingly making a false statement when acquiring a firearm in violation of 18 U.S.C. § 922(a)(6) and for receipt of a firearm while under felony indictment in violation of 18 U.S.C. § 922(n). When purchasing a firearm on August 12, 1987, Chambers represented on the firearms transaction record that he was not then under indictment for a crime punishable by imprisonment for a term exceeding one year. In fact, there was then pending against Chambers a Texas indictment, which had been returned on July 21, 1987, charging him with aggravated assault, a felony under Texas law punishable by imprisonment for a term exceeding one year. Following Chambers' federal firearms conviction but prior to sentencing, his state indictment was dismissed because the grand jury which had preferred the indictment had been selected by jury wheel after the term of court had commenced in asserted violation of Tex.Code Crim.Proc. art. 19.17. Chambers contends that his indictment was "void *ab initio*" and therefore could not serve as a predicate to his federal firearms convictions. Chambers also challenges his conviction on the ground that the district court improperly refused to instruct the jury on what he characterizes as his alibi defense. Finally, Chambers claims that he was unfairly prejudiced by the prosecutor's references in his closing remarks to details regarding the aggravated assault leading to Chambers' state indictment. We affirm.

**Facts and Proceedings Below**

On July 21, 1987, Chambers was indicted by a Texas grand jury for the June 28, 1987 state offense of aggravated assault, which under Texas law is a felony punishable by imprisonment for a term exceeding one year. Following Chambers' arrest, the presiding state district judge directed the sheriff's department to obtain a postindictment surety bond for Chambers. On July 29, 1987, the chief deputy, pursuant to orders from the sheriff, served Chambers with a copy of the indictment along with related documents issued by the state court. Later that same day, Chambers met with the sheriff in the sheriff's office to discuss Chambers' postindictment surety bond. Chambers and two of his sureties personally signed the bond. The indictment was served and the bond signed in Alpine, Texas. However, Chambers introduced evidence at trial indicating that he was in El Paso, Texas at that time.

On August 12, 1987, Chambers purchased a functional firearm from a federally-licensed gun dealer in El Paso, Texas. On the firearms transaction record Chambers answered "No" to the question, "Are you under indictment or information in any court for a crime punishable by imprisonment for a term exceeding one year?" The form stated that Chambers would not be allowed to acquire a firearm under federal law if he were under indictment at the time of the purchase. Chambers certified the accuracy of his negative response by signing the form. Chambers completed the transaction, took possession of the firearm and left the dealership.

On September 19, 1989, Chambers was convicted, following a jury trial, for knowingly making a false statement when acquiring a firearm in violation of 18 U.S.C. § 922(a)(6) and for receipt of a firearm while under felony indictment in violation of 18 U.S.C. § 922(n). Section 922(a) provides that

"[i]t shall be unlawful

". . . .

"(6) for any person in connection with the acquisition or attempted acquisition

1. District Judge of the Southern District of Texas, sitting by designation.

of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter;"

Section 922(n) provides that

"[i]t shall be unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce any firearm or ammunition or receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

The term "indictment" is defined, for the purposes of section 922 violations, as follows: "[t]he term 'indictment' includes an indictment or information in any court under which a crime punishable by imprisonment for a term exceeding one year may be prosecuted." 18 U.S.C. § 921(a)(14).[2]

On October 17, 1989, before Chambers was sentenced, he filed in the Texas court in which the indictment was pending a motion to quash the indictment.[3] This motion asserted the single ground that the grand jury which indicted Chambers had been impaneled in violation of Tex.Code Crim.Proc. art. 19.17, which provides for the selection of a grand jury after the commencement of a term of court by means of issuance of a writ to the sheriff commanding him to summon a jury commission for the purpose of selecting twenty persons to serve as grand jurors. The grand jury that indicted Chambers was impaneled on May 4, 1987, after the commencement of the term of the court during which it was called. The grand jury was selected by the jury wheel method provided for by Texas Code Crim.Proc. art. 19.01(b). Chambers asserted that use of the jury wheel method of article 19.01(b) is permissible for the selection of a jury only before the commencement of the term of the court. On October 20, 1989, the state court entered a one-page order granting Chambers' motion and reciting that "the Indictment herein is quashed and dismissed for the reason stated in Defendant's Motion to Quash Indictment." At the foot of this order appears the signature of the state district attorney under the legend "Approved."

On November 13, 1989, one day before his then scheduled federal sentencing, Chambers filed a motion for a new trial on the ground that the invalidity of his state indictment rendered it an inadequate predicate for criminal liability under the federal firearms statutes.[4] On December 5, 1989, the district court denied the motion with a memorandum opinion and, subsequently, on January 5, 1990, sentenced Chambers to concurrent three-year sentences on each count, such sentences being suspended during current five-year probationary terms. A $2,000 fine was also imposed on the section 922(a)(6) (false statement) count, and a $50 special assessment was likewise levied on each count.

## Discussion

### I. The Invalid Indictment

■ Chambers contends that he was not under a valid indictment when he pur-

---

**2.** Section 921(a)(20) excludes from the definition of "crime punishable by imprisonment for a term exceeding one year" certain business and commercial crimes, as well as state crimes classified as misdemeanors and punishable by a term of imprisonment of two years or less. These exemptions have no relevance here.

**3.** Although the legality of a grand jury in Texas must normally be challenged before the grand jury is impaneled, Tex.Code Crim.Proc. art. 19.-27, a judicially created exception to this rule applies respecting, *inter alia,* offenses committed after impanelment when the accused has no prior notice as to the selection of the grand jury. *See Sumner v. State,* 132 Tex.Crim. 281, 104 S.W.2d 45 (App.1937). The offense that the state indictment charged against Chambers was allegedly committed on June 28, 1987, well after the grand jury's impanelment.

**4.** Chambers' sentencing had been set for November 14, 1989. On November 7, 1989, Chambers moved to postpone sentencing until November 28 on the stated ground that he needed more time to respond to the presentence report. This motion was denied on November 8, 1989.

chased the firearm and that he therefore did not make a false statement on the firearms transaction record or purchase a firearm while under felony indictment. Chambers argues that, for the purposes of the instant firearms offenses, "under indictment" means "under *valid* indictment."

This argument was implicitly rejected by the Supreme Court in *Lewis v. United States,* 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980). *Lewis* held that the defendant's prior criminal conviction could properly be used as a predicate for his subsequent conviction for possession of a firearm contrary to former 18 U.S.C.App. § 1202(a)(1),[5] regardless of the fact that the prior conviction might otherwise be subject to collateral attack. The Supreme Court, assuming that the defendant's conviction was unconstitutionally obtained,[6] held that that fact did not affect his status as a convicted felon at the time he possessed the firearm in violation of former section 1202(a)(1); "Congress could rationally conclude that any felony conviction, even an allegedly invalid one, is a sufficient basis on which to prohibit the possession of a firearm." *Id.* 100 S.Ct. at 921 (citation omitted).

*Lewis* explained that where "[n]o modifier is present, and nothing suggests any restriction on the scope of the term 'convicted,'" no limitation to convictions not susceptible to collateral attack can reasonably be inferred. *Id.* at 918. The Court "view[ed] the language Congress chose as consistent with the common-sense notion that a disability based upon one's status as a convicted felon should cease only when the conviction upon which that status depends has been vacated." *Lewis,* 100 S.Ct.

at 918 n. 5. The Court therefore concluded that "Congress clearly intended that the defendant clear his status *before* obtaining a firearm, thereby fulfilling Congress's purpose 'broadly to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous.'" *Id.* at 920 (emphasis in original) (quoting *Barrett v. United States,* 423 U.S. 212, 96 S.Ct. 498, 502, 46 L.Ed.2d 450 (1976) (stating purpose of the Gun Control Act of 1968, Pub.L. 90–618, 82 Stat. 1213, 1968 U.S.Code Cong. & Admin.News 1397, in affirming a conviction under former 18 U.S.C. § 922(h), enacted as part of the Gun Control Act, which was the predecessor to current 18 U.S.C. § 922(n)).

The *Lewis* reasoning logically applies to Chambers' situation as well. The Court there recognized that an indictment is a disability similar to a conviction for the purposes of federal firearms statutes in noting that

> "[t]hose sections [ (18 U.S.C. §§ 922(g) & (h)) ] impose a disability not only on a convicted felon but also on a person under a felony indictment, even if that person subsequently is acquitted of the felony charge. Since the fact of mere indictment is a disabling circumstance, *a fortiori* the much more significant fact of conviction must deprive the person of a right to a firearm." *Id.*[7]

Chambers, like the *Lewis* defendant, had ample opportunity to "clear his status *before* obtaining a firearm," *Lewis,* 100 S.Ct. at 920, but chose not to do so.

The analogy from conviction to indictment also finds support in *United States v. Brown,* 484 F.2d 418 (5th Cir.1973), *cert.*

---

5. Former section 1202(a) read in part:
   "Any person who—
   "(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony,
   " . . . .
   "and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both."
   The substance of this provision is now contained in 18 U.S.C. § 922(g).

6. The defendant claimed that he was convicted without assistance of counsel, contrary to *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

7. *See also Dickerson v. New Banner Inst., Inc.,* 460 U.S. 103, 103 S.Ct. 986, 991 n. 6, 993, 74 L.Ed.2d 845 (1983); *United States v. Goodheim,* 651 F.2d 1294, 1296 n. 2 (9th Cir.1981) (*"Lewis* governs prosecutions under §§ 922(a)(6) and 922(h)(1) [ (predecessor to § 922(n)) ], as well as § 1202(a)(1).").

*denied,* 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575 (1974). In *Brown,* the defendant was convicted for transporting a firearm in interstate commerce while under indictment in violation of 15 U.S.C. § 902(e). The defendant appealed his conviction on the ground, *inter alia,* that his indictment could not serve as a predicate for prosecution under section 902(e) because the indictment was invalid. This Court, finding it unnecessary to determine the validity of the indictment, held that "[e]ven assuming *arguendo* that the underlying indictment is later found invalid, the crime under § 902(e) is complete when a firearm is carried in interstate commerce by a person then under indictment." *Id.* at 424 (citing *United States v. Quiroz,* 449 F.2d 583, 584–85 (9th Cir.1971) (conviction for transporting firearms while under indictment in violation of former 18 U.S.C. § 922(g) not reversible on ground of subsequent dismissal of predicate indictment) and *DePugh v. United States,* 393 F.2d 367, 369–70 (8th Cir.) (conviction for transporting firearm while under indictment in violation of former 15 U.S.C. § 902(e) not reversible on ground of subsequent quashing of predicate indictment; "state indictment was not void *ab initio,* but only voidable"), *cert. denied,* 393 U.S. 832, 89 S.Ct. 101, 21 L.Ed.2d 102 (1968)).

Chambers argues that Congress overruled *Lewis'* holding that a person is considered to have been convicted, for the purposes of the firearms statutes, until such conviction is set aside, citing the 1986 amendments to the Gun Control Act of 1968. This cited amendment provides that what constitutes a crime punishable by a term exceeding one year

"shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." Firearms Owners' Protection Act, Pub.L. 99–308, § 101(5), 1986 U.S. Code Cong. & Admin.News (100 Stat.) 449, 450 (codified at 18 U.S.C. § 921(a)(20)).

We are unpersuaded by Chambers' arguments based on this amendment. To begin with, it only purports to deal with convictions, and makes no mention of indictments. It is an indictment, not a conviction, with which we are here concerned. The definition of an indictment can be found in the same section as the definition of a conviction, *see* 18 U.S.C. § 921(a)(14) & (20), yet Congress left the definition of an indictment unaltered, thereby suggesting that any change by the amendment was intended to apply only to convictions and not to other disabilities under the federal firearms statutes.[8]

Finally, the premise of Chambers' argument based on the above mentioned 1986 amendment to the definition of conviction is that a state pardon or civil rights restoration respecting a state felony conviction is to be given fully retroactive effect. Under Chambers' reasoning, for example, if one is convicted of a state felony in 1987 and while still under that conviction receives a firearm in 1988, that 1988 receipt,

---

**8.** Furthermore, as part of the Firearms Owners' Protection Act, pursuant to which the amendment was passed, Congress shifted the provision that creates the disability of an indictment for the purposes of receiving or shipping firearms in interstate commerce to a newly created section. Pub.L. 99–308, § 102(8), 1986 U.S.Code Cong. & Admin.News (100 Stat.) 449, 452 (codified at 18 U.S.C. § 922(n), formerly contained in 18 U.S.C. § 922(h)(1)). We have previously held that we will "rely ... on the common presumption that when Congress re-enacts a statute without overturning prior judicial constructions of it, the earlier interpretations

should be followed." *United States v. Falletta,* 523 F.2d 1198, 1201 (5th Cir.1975) (citation omitted) (interpreting reenactment of former 18 U.S.C. § 922(d)). Six years before the Firearms Owners' Protection Act became law, the Supreme Court in *Lewis* had interpreted the term "conviction" in a statutory context similar to that of section 922(n) to include a conviction subsequently invalidated and it had characterized an indictment as a disability similar to that of a conviction. The same rationale should continue to apply to the unchanged definition of indictment.

though a violation of 18 U.S.C. § 922(g) when made, will be *retroactively* legalized by a 1990 state restoration of civil rights respecting the 1987 felony conviction.[9] Chambers' construction thus leads to the conclusion that Congress intended to give state officials the power to pardon for already committed federal offenses. This is a highly dubious construction.[10] The far more natural construction is that under the referenced amendment the restoration of civil rights, pardon, expungement, or setting aside of the predicate conviction, operates prospectively *only,* so that a conviction for which, for example, a pardon has been granted will not operate under section 922(g) to prohibit receipt, *after the pardon,* of a firearm. This approach is wholly consistent with the underlying rationale of *Lewis,* that the conviction, no matter how invalid, must be in some manner set aside *before* the party convicted may lawfully receive a firearm.

We reject Chambers' arguments based on the 1986 amendment to the definition of conviction.

Chambers also contends that even if the reasoning of *Lewis* can be extended to apply to an invalid indictment, an exception to *Lewis* exists where the invalidity of the underlying disability is so fundamental as to render it void *ab initio* under state law. We can agree that not every piece of paper filed in court labeled an indictment and purporting to charge someone with a felony is an "indictment" for purposes of section 922(n): a counterfeit instrument entirely created by a private individual and accidentally accepted for filing by the court clerk obviously would not suffice. But not every defective indictment is such an entire nullity, and we conclude that the defect found in Chambers' state indictment is not of such a character as to prevent it from qualifying under section 922(n).

It is first necessary to identify the source of law to be applied in determining this question. In *Dickerson v. New Banner Inst. Inc.,* 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983), the Supreme Court held that "[w]hether one has been 'convicted' within the language of the gun control statutes is necessarily ... a question of federal, not state, law, despite the fact that the predicate offense and its punishment are defined by the law of the state." *Id.* 103 S.Ct. at 991 (citations omitted). *See also Cammisano v. United States,* 829 F.2d 687, 688 (8th Cir.1987); *United States v. Crochet,* 788 F.2d 1061, 1062 (5th Cir. 1986).

The legal effect of the conviction's subsequent invalidation is a federal question as well. In *Dickerson,* the Treasury Department's Bureau of Alcohol, Tobacco and Firearms had revoked a firearm dealer's license because of firearms disabilities imposed under former 18 U.S.C. §§ 922(g) and 922(h). The dealer's disability was his state felony conviction, which had been expunged by an Iowa court after he had successfully completed probation and before his license was revoked. The Supreme Court rejected the defendant's claim that he had not been convicted within the language of the firearms statutes. In addressing the question of whether the expungement pursuant to Iowa law "nullified his conviction for purposes of the federal statute," *id.* at 992, the Court stated that "[f]or purposes of Iowa's own gun control statute, it might be argued that the conviction was nullified.... In any event, Iowa's law is not federal law, and it does not *control our decision here.* We therefore look to federal considerations in resolving the present case." *Id.* at 992 n. 9 (citations omitted).

---

**9.** Indeed, Chambers' approach would seemingly lead to the conclusion that, in the example given, a 1989 federal conviction for violating section 922(g) would itself become subject to collateral attack by virtue of the 1990 state restoration of civil rights.

**10.** *Cf. U.S. Const.* art. II, § 2, cl. 1 ("The President ... shall have Power to grant Reprieves and Pardons for Offenses against the United States"). It has generally been recognized that this pardon power "may be exercised at any time after its [the offense's] commission, either before legal proceedings are taken, or during their pendency, or after conviction and judgment." *Ex parte Garland,* 71 U.S. (4 Wall.) 333, 380, 18 L.Ed. 366, 370 (1867).

Chambers does not challenge the extension of the holding of *Dickerson* from a conviction to an indictment, nor is any ground for doing so apparent. Chambers rather claims that Congress intended, by its referenced 1986 amendments to the Gun Control Act of 1968, that the issues of whether one has been indicted and whether that indictment is a nullity be treated as issues of state law. The relevant part of the amendment, cited above, provided that "[w]hat constitutes a conviction of such a crime [one punishable by a prison term exceeding one year] shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." Pub.L. 99–308, § 101(5), 1986 U.S.Code Cong. & Admin.News (100 Stat.) 449, 450 (codified at 18 U.S.C. § 921(a)(20)). Chambers claims that this amendment evidences Congress's intent that the validity of the underlying state court proceedings be determined by looking exclusively to the state law involved.

■ Whatever the amendment may mean in this regard with respect to convictions, it does not purport to speak to indictments. We accordingly conclude, in accordance with *Dickerson* and *Lewis*, that whether a state indictment that is defective in some particular may nevertheless be an indictment for purposes of section 922(n) is ultimately a question of federal law.[11] Of course, the nature and consequences of the defect under state law will be relevant to the determination of that federal question.

Chambers' argument seems to be premised on the assumption that the defect in his state indictment was of such a fundamental character that, as a matter of Texas law, it could not be waived and could be raised for the first time on collateral attack, even though there was ample, unavailed-of opportunity to raise it prior to trial. From this premise, Chambers argues that the conclusion necessarily follows that the state indictment is not an indictment at all for purposes of section 922(n). But, if Chambers' premise is wrong, then plainly his entire argument fails, for *Lewis* held that even where the state conviction *was* subject to nullification on federal collateral attack, it was nevertheless a conviction for purposes of the federal firearms statutes. Hence, we initially note our disagreement with Chambers' premise.

Texas law generally requires a challenge to the indictment to be made at the earliest possible time. Tex.Code Crim.Proc. art. 19.27 (formerly Tex.Code Crim.Proc. art. 358) provides:

> "Before the grand jury has been impaneled, any person may challenge the array of jurors or any person presented as a grand juror. In no other way shall objections to the qualifications and *legality of the grand jury* be heard. Any person confined in jail in the county shall upon his request be brought into court to make such challenge." (Emphasis added).

While, as previously observed (see note 3, *supra*), the time for making a challenge to the indictment on the basis of the "legality of the grand jury" has been judicially extended beyond the time of impanelment in instances where the accused was not being held when the grand jury was impaneled, *see Sumner v. State*, 132 Tex.Crim. 281, 104 S.W.2d 45 (App.1937), nevertheless the statute requires that the challenge be made at the earliest practical time. As the Court of Criminal Appeals stated in *Tyson v. State*, 146 Tex.Crim. 128, 171 S.W.2d 496, 498 (App.1943): "It seems clearly to have been the intention of the Legislature by the enactment of Article 358, C.C.P., [now art. 19.27] to put a time limit upon questioning the organization of grand juries ... the point should be raised at the *first opportunity*." (Emphasis in original). The same general thrust is also apparent from Texas

---

**11.** *See also Taylor v. United States*, — U.S. —, 110 S.Ct. 2143, 2154, 109 L.Ed.2d 607 (1990) (rejecting defining "burglary", under 18 U.S.C. § 924(e), in accordance with state law, and approving *Dickerson* holding that "absent plain indication to the contrary, federal laws are not to be construed so that their application is dependent on state law, 'because the application of federal legislation is nationwide and at times the federal program would be impaired if state law were to control' ").

Code of Criminal Procedure articles 1.14 and 28.01.[12]

Many Texas decisions have held that complaints of the indictment based on asserted illegality in the selection or composition of the grand jury are waived if not made at the first opportunity. *See, e.g., Muniz v. State,* 573 S.W.2d 792 (Tex.Crim. App.1978) (waiver of claim that Mexican–Americans had been systematically excluded from grand jury), *cert. denied,* 442 U.S. 924, 99 S.Ct. 2850, 61 L.Ed.2d 291 (1979); *Valadez v. State,* 408 S.W.2d 109, 111 (Tex. Crim.App.1966) (same); *Ex parte Covin,* 161 Tex.Crim. 320, 277 S.W.2d 109 (App. 1955) (waiver of claim that three members of grand jury had not paid poll taxes and were therefore not legally qualified); *Tyson* (waiver of claim that two members of grand jury were related to defendant); *Armentrout v. State,* 138 Tex.Crim. 238, 135 S.W.2d 479 (App.1940) (waiver of claim that the grand jury had been improperly reconvened following discharge and two new grand jurors improperly substituted); *Winn v. State,* 138 Tex.Crim. 202, 135 S.W.2d 118 (App.1940) (waiver of claim grand jurors summoned for one term were used for another); *see also Ratcliff v. Estelle,* 597 F.2d 474 (5th Cir.) (claim that blacks were systematically excluded from grand jury whose indictment led to defendant's Texas conviction could not be raised in a federal habeas proceeding where barred in state court by procedural default of waiver), *cert. denied,* 444 U.S. 868, 100 S.Ct. 143, 62 L.Ed.2d 93 (1979).

Further, in *Ex parte Traxler,* 148 Tex. Crim. 550, 189 S.W.2d 749 (App.1945), the Court of Criminal Appeals stated that former articles 333 *et seq.* of the Code of Criminal Procedure (now arts. 19.01 *et seq.*) "relating to the organization of grand juries, are directory and not mandatory." Moreover, we have found no Texas appellate decision holding that the authority given district judges by article 19.01(b) to select prospective grand jurors by the jury wheel method in lieu of the grand jury commissioners method is restricted to grand juries selected before the term commences. Nothing in article 19.01(b), or in any other provision of the Texas Code of Criminal Procedure cited to us (or in the Texas Constitution), expressly states any such restriction. Chambers argues that such a restriction arises from article 19.17, but if so the restriction is at most an implied one, and the implication is, at best, less than clear and compelling.[13]

---

**12.** Article 1.14 provides:

"(a) The defendant in a criminal prosecution for any offense may waive any rights secured him by law except the right of trial by jury in a capital felony case.

"(b) If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding. Nothing in this article prohibits a trial court from requiring that an objection to an indictment or information be made at an earlier time in compliance with Article 28.01 of this code."

Clause (b) of art. 1.14 was added by amendment effective December 1, 1985, following the November 1985 amendment to Article V, § 12 of the Texas Constitution. It is generally understood that these amendments arose from dissatisfaction with what was viewed as the overly technical treatment of indictments, particularly as to their wording, by the Texas Court of Criminal Appeals. *See generally* Dix, *Texas Changing Instrument Law: The 1985 Revisions and the Continuing Need for Reform,* 38 Baylor L.Rev. 1 (1986).

Article 28.01 authorizes pretrial conferences at which challenges to "the form or substance of the indictment" must be raised or will be deemed waived (absent good cause for failure to raise). *Id.* §§ 1(4) & 2.

**13.** Article 19.01(b), authorizing the use of the jury wheel method, was added in 1979. Article 19.01 previously (and as enacted in 1965) provided only for the appointment of grand jury commissioners, which provisions are continued in article 19.01(a). Prior to this 1979 amendment, use of the jury wheel method was not authorized for the selection of grand jurors. *See De La Garza v. State,* 650 S.W.2d 870, 874 (Tex.App.1983). Article 19.17, which has not been amended since its enactment in 1965 (and as then enacted was substantially the same as former article 348), provides that when "a grand jury shall not be selected or summoned prior to the commencement of any term of court, or when none of those summoned shall attend, the district judge *may* at any time after the commencement of the term, *in his discretion,*" select new jury commissioners who shall select grand

■ We are unable to conclude that selection of a grand jury under article 19.-01(b) after commencement of the term of court constitutes such an illegality that an indictment returned by that grand jury could be successfully challenged on that basis for the first time by collateral attack on a conviction under the indictment despite adequate opportunity to raise the challenge prior to trial. Nor do any of the authorities cited by Chambers compel a contrary conclusion.

*None* of the cases cited by Chambers involved article 19.01(b). Chambers relies primarily on two cases, *Adame v. State*, 162 Tex.Crim. 178, 283 S.W.2d 223 (App. 1955), and *Bustamente v. State*, 139 Tex. Crim. 229, 139 S.W.2d 814 (App.1940) (*Bustamente II*). Each of these cases was a direct appeal from a conviction, and in each the appellant raised on the appeal, and had raised in the trial court, the challenge to the indicting grand jury that the appellate court ultimately sustained.[14] Moreover, the defect in each of the cases was quite different from that claimed here. In *Adame* the specially appointed district judge dismissed without legal authority the entire properly selected panel of grand jurors, on the stated ground that the commissioners did not use care in selecting fair and impartial jurors, and selected new commissioners who in turn selected the new grand jury panel that returned the complained of indictment. The Court of Criminal Appeals plainly believed that in doing so the district judge was acting at the *ex*

*parte* behest of (and indeed by secret pre-appointment arrangement with) the attorney general who desired to procure new grand jurors more inclined to return indictments in matters then being investigated by that official. In holding that the timely, repeated challenges in the trial court to the new grand jury and to the indictment should have been sustained, the Court of Criminal Appeals stated that "an arbitrary disregard of those statutes [prescribing procedures] in the selection and organization of a grand jury vitiates and renders such grand jury without authority." *Id.* 283 S.W.2d at 229.[15]

*Bustamente II* set aside a conviction on direct appeal, sustaining the appellant's contention, which had been raised in the trial court, that the indictment was invalid because it was returned by a grand jury composed of only eleven persons. The court relied on its earlier opinion in *Ex parte Bustamente*, 138 Tex.Crim. 396, 137 S.W.2d 29 (App.1940) (*Bustamente I*), where the same defendant, then held in *pre-trial* confinement under the same indictment, was granted habeas corpus relief because the indictment was returned by a grand jury composed of only eleven persons, contrary to the provision of Article V, section 13 of the Texas Constitution that grand juries "shall be composed of twelve men." *See id.* at 31. The court concluded that habeas relief was warranted because the indictment was "found by a grand jury whose organization was void." *Id.* at 32. *Bustamente I* relied in large part on *Lott*

jurors. (Emphasis added). While article 19.-01(b) authorizes the use of the jury wheel "[i]n lieu of the selection of prospective jurors by means of a jury commission," it does not state that the jury commission for which the wheel method may be substituted is (or is only) the article 19.01(a) jury commission, as opposed to also including the article 19.17 jury commission.

14. In *Adame* it is clear that the challenge was *timely* raised in the trial court. *Id.* at 224. In *Bustamente II* it is clear that the challenge was raised in the trial court, apparently timely. *Id.* *See also Ex parte Bustamente*, 138 Tex.Crim. 396, 137 S.W.2d 29 (App.1940) (*Bustamente I*).

15. *Adame* cited in this regard *Martinez v. State*, 134 Tex.Crim. 180, 114 S.W.2d 874, 877 (App.

1938), where the court stated that in this connection "the term 'arbitrary' disregard" meant "a purposeful or intentional failure to follow the statute." Nothing of the kind is suggested here, much less the sort of situation that the *Adame* court was concerned with in which the district judge, pursuant to *ex parte* urgings of an interested party, would "dictate who composed the grand jury." *Adame*, 283 S.W.2d at 230. Here, use of the jury wheel is designed and calculated to prevent that precise type of thing.

We further note that *Martinez*, like *Adame*, was a direct appeal in which the challenge to the indictment was raised as a ground of appeal and had been properly preserved below both by timely challenge to the appointment of the commissioners and by timely pre-trial motion to quash the indictment. *Martinez*, 114 S.W.2d at 875.

*v. State*, 18 Tex.App. 627 (Tex.App.1885), where on direct appeal the appellant's contention that the indictment was invalid because the grand jury was composed of thirteen persons, rather than the constitutionally mandated twelve, was sustained, and the conviction reversed, notwithstanding that the only complaint in the trial court was by motion in arrest of judgment, which was too late. The *Lott* court—in language quoted in *Bustamente I*, 137 S.W.2d at 31—stated that "a pretended indictment preferred by such body can have no legal standing or effect whatever. It cannot confer any jurisdiction of the case upon the court.... [T]he [trial] court was without any jurisdiction of the case." *Lott* at 630.[16]

*Bustamente I* and *II* do not lead us to conclude that in this case the indictment was so defective that Texas law would allow conviction under it to be successfully challenged for the first time on habeas corpus, despite unavailed-of opportunity to have raised such challenge before and at trial and on appeal. *Bustamente* and *Lott*, and similar cases, involve a virtually unique situation, a grand jury composed of a number of persons other than that expressly required by the Texas Constitution. Here there is no constitutional defect claimed in the organization or composition of the grand jury.[17] The method followed to select the grand jurors was one of intrinsic fairness and reliability that was specifically provided for by a statute of unquestioned constitutional validity, and was not contrary to any express provision of that or any other statute or to the dictates of any appellate court decision. To put this type of case in the *Bustamente* class—indeed, to go even further, as Chambers would, and hold that the supposed defect is wholly nonwaivable so that it can be raised for the first time on collateral attack of the conviction despite ample, unavailed-of opportunity to raise it before and at trial and on

direct appeal—is to in effect read articles 1.14, 19.27, and 28.01 out of the Texas Code of Criminal Procedure and to "overrule" the numerous decisions of the Texas Court of Criminal Appeals that have enforced those provisions (particularly article 19.27 and its predecessors), often holding that they barred far more serious challenges, such as those asserting racial discrimination in the selection of the grand jury contrary to both the Texas and United States Constitutions.

But even if Chambers' premise were correct—even if the grand jury's empanelment under article 19.01(b) rather than article 19.17 rendered the indictment so defective that conviction pursuant to it could be set aside on collateral attack notwithstanding that defect was not raised earlier despite ample opportunity to do so prior to trial—we nevertheless would not conclude that the indictment was therefore such a complete nullity that while it was still outstanding it did not bar firearm acquisition pursuant to section 922(n). As previously indicated, this is ultimately a question of federal law, although the context in which the question is answered must include consideration of state law.

Importantly, "[t]he federal gun laws ... focus not on reliability, but on the mere fact of conviction, or even indictment, in order to keep firearms away from potentially dangerous persons." *Lewis*, 100 S.Ct. at 922. "Congress did not intend to allow a defendant to question the validity of his prior conviction as a defense to a firearms charge," *United States v. Mayfield*, 810 F.2d 943, 945 (10th Cir.1987), and convictions deemed void *ab initio* under state law for reasons classified as jurisdictional nevertheless remain convictions for purposes of section 922(g) until set aside. *Id.* Nor did Congress intend that success-

---

**16.** We note that in *King v. State*, 473 S.W.2d 43, 51 (App.1971), discussed in note 18 *infra*, the court overruled *Lott* and *Rainey v. State*, 19 Tex.App. 479 (Tex.App.1885), also relied on in *Bustamente I*, to the extent that the broad language of *Lott, Rainey,* or "other cases" might indicate that anything in the Texas Constitution prevented a district court from having jurisdic-

tion over an unindicted noncapital felony where the accused had properly waived indictment.

**17.** If article 19.01(b) applied to the selection of grand jurors after commencement of the term of court, it would not on that account (or for any other reason) be contrary to anything in the Texas (or United States) Constitution.

ful prosecution under these statutes hinge on whether an independent sovereign changes its mind with respect to its own criminal proceedings. *Dickerson,* 103 S.Ct. at 994; *DePugh,* 393 F.2d at 370 ("common sense ... dictates that federal law enforcement should not hinge on the outcome of a state charge").

We observe that the general rule is that even lack of subject matter jurisdiction does not render void the final judgment of a court in a case that has to any extent been litigated, and this is so "[e]ven if the issue of subject matter jurisdiction has not been raised and determined." *Restatement (Second) of Judgments* § 12 & comment *d* (1982). This rule has been applied by the Supreme Court to judgments of federal district courts. *See Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940). Exceptions are recognized for instances where "[t]he subject matter was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority," where the judgment would "substantially infringe the authority of another tribunal or agency of government" or where the court was not one "in which a challenge to subject matter jurisdiction could be given substantially the same quality of consideration that is available in a trial court of general jurisdiction." *Restatement (Second) of Judgments* § 12 & comment *e* (1982). None of these exceptions obtain here. The indictment was returned to the proper Texas district court, a court of general jurisdiction under Texas Law (Tex. Const. Art. 5, § 8). Prosecution under the indictment would not infringe the authority of any other tribunal or agency. Nor could it be said that prosecution under the indictment would be "so plainly beyond the court's jurisdiction" as to con-

stitute "a manifest abuse of authority." As previously indicated, there is no express language in any of the Texas statutes (or in the Texas Constitution) prohibiting use of section 19.01(b) in these circumstances, nor has any reported Texas appellate decision held that it is unavailable in a case like the present. The Texas Code of Criminal Procedure, article 21.01, defines an indictment as "the written statement of a grand jury accusing a person therein named of some act or omission which, by law, is declared to be an offense." Moreover, "[A]n indictment shall be deemed sufficient" if it satisfies nine requisites, the third of which states that the indictment "must *appear* to be the act of a grand jury of the proper county." Tex.Code Crim. Proc. art. 21.02 (emphasis added). Chambers' indictment satisfied the general definition of an indictment and was sufficient under all nine requisites. His indictment unequivocally "appear[ed] to be the act of a grand jury of the proper county." [18]

While the analogy is not exact, it is also persuasive that "even an injunction that is ultimately invalidated for *lack of jurisdiction* is, while the jurisdictional question is pending, a 'lawful order,' violation of which is punishable as contempt." *National Maritime Union v. Aquaslide 'N' Dive Corp.,* 737 F.2d 1395, 1399 (5th Cir.1984) (emphasis added) (citing, *inter alia, United States v. United Mine Workers of America,* 330 U.S. 258, 67 S.Ct. 677, 695, 91 L.Ed. 884 (1947)). Although there may be exceptions to this rule for orders that are "transparently invalid" or have "only a frivolous pretense to validity," or where "there was no opportunity for effective review of the order before it was violated," *see* Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d*

---

**18.** Further, although the Texas Constitution grants to those accused of felonies the protection of "indictment of a grand jury" and makes no provision for waiver of this right, Tex. Const. Art. 1, § 10, this is a protection that the accused may nonetheless wholly waive in noncapital felonies, Tex.Code Crim.Proc. art. 1.141, and the validity of this entirely statutory waiver provision has been upheld against the claim that Article 1 § 10 defines the jurisdiction of the court. *King v. State,* 473 S.W.2d 43 (Tex.Crim.

App.1971). *Cf. Barkman v. Sanford,* 162 F.2d 592 (5th Cir.), *cert. denied,* 332 U.S. 816, 68 S.Ct. 155, 92 L.Ed. 393 (1947) (same as to Fifth Amendment in federal noncapital felony). However, where there is not an affirmative waiver as required by Article 1.141, it has been held that the conviction is open to collateral attack as it affects the jurisdiction of the convicting court. *Ex parte Smith,* 650 S.W.2d 68 (Tex.Crim.App.1981).

§ 3537 (1990 pocket part) (discussing *Walker v. City of Birmingham*, 388 U.S. 307, 87 S.Ct. 1824, 1827, 18 L.Ed.2d 1210 (1967) and related cases), such exceptions can provide Chambers no comfort. For the reasons previously stated, we conclude that even if Chambers' state indictment were ultimately held to be so invalid as to confer no jurisdiction whatever on the state court, its pretense to validity was nevertheless not so frivolous or transparent that Chambers could simply ignore it and notwithstanding its pendency engage in the self-help of acquiring a firearm. We believe that Congress, in section 922(n), intended that in such a situation firearms acquisitions be postponed until the validity of the indictment is determined.[19]

The Court in *Lewis* placed similar emphasis on the ability of the defendant to have challenged his conviction *before* acquiring the firearm that he was convicted of having possessed. The Court stated that "it is important to note that a convicted felon is not without relief.... [T]he disability [of a conviction] may be removed by a qualifying pardon or the Secretary's consent. Also, petitioner, before obtaining his firearm, could have challenged his prior conviction in an appropriate proceeding in the Florida state courts." *Id.* 100 S.Ct. at 920 (citations omitted). *Cf. United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 2157, 95 L.Ed.2d 772 (1987) (holding *Lewis* inapplicable where judicial review of administrative ruling is unavailable).

Regardless of whether the asserted defects in Chambers' indictment were such as Texas law would allow to be first raised in a post-conviction habeas corpus proceeding, the indictment had at least sufficient colorable status as an official felony charge to invoke section 922(n) and preclude Chambers from resorting to pure self-help in the

acquisition of firearms without first setting the indictment aside.[20]

We reject Chambers' first claim of error.

## II. Alibi and Specific Intent Instructions

■ Chambers contends that the district court improperly refused to give the jury the alibi defense and specific intent instructions requested by him. The "alibi" is Chambers' claim that on July 29, 1987, when the government's evidence reflected he had been served with the indictment, and signed the postindictment bond, in Alpine, Texas, he was actually in El Paso, Texas. This claim does not constitute an alibi defense. An alibi defense precludes the defendant's guilt by placing him, when the offense occurred, at a location different from that at which he allegedly committed the crime. 21 Am.Jur.2d, *Criminal Law* § 192 (1981); *see* Fed.R.Crim.P. 12.1(a). The time and place of the crime in the instant case were August 12, 1987, at the firearms dealership in El Paso, Texas, when and where Chambers initially acquired the firearm and in connection therewith signed the statement that he was not under indictment. Chambers does not claim that he could not have violated the firearms statutes because he was not at the dealership when the firearm was purchased and the form executed. The district court therefore committed no error in refusing the requested alibi instruction.

■ Chambers' "alibi" is relevant only in the sense of constituting circumstantial evidence in support of his claim that he did not have the knowledge of the indictment. Knowledge of the pending indictment is required to prove a violation of sections 922(a)(6) and 922(n). *See Brown*, 484 F.2d at 424. Although the district court refused to give the jury the precise specific intent

---

**19.** Of course, Chambers could not be expected to do this if he were unaware of the indictment. But in accordance with the court's charge, the jury, by its verdict of guilty, necessarily found (on more than adequate evidence) that he knew of the indictment when he acquired the firearm and signed the form.

**20.** Indeed, even for a defect as substantial as that in *Bustamente I*—a grand jury composed of

less than the constitutionally required number— we are pointed to no Texas decision authorizing self-help; rather, the accused held under such an indictment resorts to the judicial remedy of habeas corpus; he is presumably not free to simply walk away from pretrial (or post-conviction) confinement without first judicially establishing the indictment's invalidity.

instructions requested by Chambers, the requirement that the jury find that Chambers had knowledge of the existence of the indictment at the time he purchased the firearm and signed the form was clearly stated in the jury charge.

We have held that

" '[a] trial judge's refusal to deliver a requested instruction constitutes reversible error if, but only if, the instruction (1) is substantively correct; (2) was not substantially covered in the charge actually delivered to the jury; and (3) concerns an important point in the trial so that the failure to give it seriously impairs the defendant's ability to effectively present a given defense.' " *United States v. Mollier*, 853 F.2d 1169, 1174 (5th Cir. 1988) (quoting *United States v. Grissom*, 645 F.2d 461, 464 (5th Cir. Unit A 1981)) (citations omitted).

We need not consider whether Chambers' requested jury instruction was substantively correct because the requested instruction was substantially covered in the charge actually delivered to the jury and the refusal of the district court to give the requested instruction in no way impaired Chambers' presentation of his defense. Accordingly, we hold that the district court committed no error in refusing to give the requested specific intent instructions.[21]

III. The Prosecutor's Remarks

█ Chambers claims that the jury was unfairly prejudiced by the prosecutor's reference to details of the aggravated assault with which Chambers was charged in the state indictment. This complaint relates only to the prosecutor's statement in closing argument that "people who go out shooting through windows of pickup trucks are not eligible [to buy firearms] when they're charged with felonies, ladies and gentlemen." Chambers challenges the prosecutor's remarks for the first time on appeal, as he did not object to them at trial or move for a curative instruction or mistrial.[22] Accordingly, he has waived this issue, and our review is limited to the plain error standard of Rule 52(b) of the Federal Rules of Criminal Procedure. *United States v. Garcia–Pillado*, 898 F.2d 36, 39 (5th Cir.1990); *United States v. Canales*, 744 F.2d 413, 431 (5th Cir.1984); *United States v. Montemayer*, 684 F.2d 1118, 1124 (5th Cir.1982).

Chambers' state indictment, which was admitted into evidence, recites that he did

"intentionally and knowingly threaten LARRY WHITE with imminent bodily injury and did then and there use a deadly weapon, to-wit: a rifle, that in the manner of its use and intended use was capable of causing death and serious bodily injury."

Counsel for the defendant mentioned in his opening statement the fact that a pickup truck was involved in the shooting, and a witness for the prosecution mentioned, without defense objection, the fact that

---

21. The evidence of Chambers' knowledge of the existence of the indictment at the time he purchased the firearm and signed the form was clearly sufficient to support his convictions, and he does not contend otherwise.

22. Chambers claims he preserved his objection by his pretrial motion *in limine* number three that requested that the court order the prosecutor not to "allude to ... the facts of the alleged aggravated assault ... for which Defendant was indicted ... without first approaching the bench and requesting a ruling on such matter." Just before opening statements at trial, the trial court granted this motion, directing the government and its witnesses not to go into that matter "without first approaching the bench and securing a ruling from the Court." Subsequently, defense counsel in his opening statement to the jury (before the presentation of evidence) himself went into this subject matter, stating "[t]he

Sheriff tells him [Chambers], he says, 'Robert, if you make restitution to the pickup, that'll finish this case of aggravated assault.' " The prosecutor objected, and at a bench conference urged that the defense had gone into the subject matter covered by the motion *in limine*. The district court then ruled "I withdraw that order on the motion in limine." We have frequently held "a motion in limine is insufficient to meet" the requirement for a trial objection to the specific matter put before the jury, and that "a party whose motion in limine is overruled must renew his objection when the ... [objected to matter] is about to be introduced at trial," failing in which the matter is not preserved for appellate review. *Wilson v. Waggener*, 837 F.2d 220, 220 (5th Cir.1988). Chambers' motion *in limine* did not suffice to preserve the matter for appellate review.

Chambers had been indicted for shooting at a vehicle. Thus, the prosecutor merely repeated information already in evidence. There was no plain error and Chambers' complaint in this respect presents no ground for reversal.

### Conclusion

We hold that Chambers' state indictment does not fail as a predicate for criminal liability under 18 U.S.C. §§ 922(a)(6) or 922(n) merely by reason of the fact that subsequent to the time the firearms offenses were committed the state indictment was quashed because the grand jury was selected under article 19.01(b) rather than article 19.17. We also find that the district court did not reversibly err by failing to give Chambers' requested alibi and specific intent instructions, and that the prosecutor's closing remarks concerning Chambers' indictment do not constitute reversible error. Accordingly, Chambers' convictions are

AFFIRMED.