Diane L. **BLOOMQUIST**, Plaintiff,

v.

Nicholas F. **BRADY**, Secretary of the Treasury, Defendant.

No. 92–CV–689A.

United States District Court, W.D. New York.

July 28, 1995.

Freedman & Freedman, P.C. (Brenda M. Freedman, Maryann Saccomondo Freedman, of counsel), Buffalo, NY, for plaintiff.

Patrick H. NeMoyer, U.S. Atty., W.D.N.Y. (Donald P. Simet, Asst. U.S. Atty., of counsel), Buffalo, NY, for defendant.

## DECISION AND ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Leslie G. Foschio, pursuant to 28 U.S.C. § 636(b)(1), on May 19, 1993. On April 25, 1994, defendant filed a motion to dismiss, or alternatively, for summary judgment.

On March 10, 1995, Magistrate Judge Foschio filed a Report and Recommendation recommending that defendant's summary judgment motion be granted. Plaintiff filed objections to the Report and Recommendation on April 13, 1995. Defendant filed a response to plaintiff's objections on June 21, 1995. The Court heard argument on July 13, 1995.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon a *de novo* review of the Report and Recommendation and of the record, and after reviewing the submissions and hearing argument, the Court adopts the proposed findings of the Report and Recommendation.

Accordingly, for the reasons set forth in Magistrate Judge Foschio's Report and Recommendation, defendant's motion for summary judgment is granted and plaintiffs complaint is dismissed as barred by the doctrine of *res judicata.*

IT IS SO ORDERED.

# REPORT AND RECOMMENDATION

## JURISDICTION

FOSCHIO, United States Magistrate Judge.

This matter was referred to the undersigned by the Honorable Richard J. Arcara on May 19, 1993 for report and recommendation on any dispositive motions. The matter is presently before the court on Defendant's motion to dismiss, or alternatively, for summary judgment, filed April 25, 1994.

## BACKGROUND

Plaintiff, Diane L. Bloomquist, filed, with the Equal Employment Opportunity Commission ("EEOC"), four separate, but related, complaints charging sex discrimination and/or reprisal discrimination for prior equal employment opportunity activity against Respondent, the Internal Revenue Service ("IRS").[1] The four complaints were the subject of a hearing held August 13–16, 1991, before EEOC Administrative Law Judge ("ALJ") Kenneth W. Chu, who made a proposed decision to the Treasury Department on December 31, 1991. The proposed decision also recommended adopting findings of

no discrimination with respect to the January 29, 1990, the April 18, 1990, and the July 15, 1990 complaints, as well as the claims dealing with alleged job documentation, leave restriction, the threat to have Bloomquist followed and the instructions not to meet with EEO officials in the July 4, 1990 complaint. However, the ALJ recommended that a finding of discrimination be adopted as to Bloomquist's complaint that the IRS perceived her to be mentally handicapped, and the IRS' decision to remove her firearm on June 18, 1990.

■ The Treasury Department issued a final decision on March 2, 1992, finding that the evidence presented was insufficient to support Bloomquist's claims of discrimination and reprisal. Bloomquist appealed to the EEOC's Office of Federal Operations on March 21, 1992. No decision has been issued and one hundred and eighty days have passed since the appeal was filed.[2]

In the meantime, Bloomquist filed, on February 28, 1991, an action in New York State Supreme Court against Donna P. Sullivan, her Group Manager at the Criminal Investigation Division of the IRS, for libel and infliction of emotional distress.[3] Bloom-

---

1. The January 29, 1990 complaint alleged that Bloomquist was discriminated against because of her gender and/or in retaliation for prior equal opportunity employment ("EEO") activity, when she was counseled and received documentation from Anthony Gagliardi, an acting manager, concerning her work activities from December 1, 1989 to January 10, 1990.

   The April 18, 1990 complaint alleged that Gagliardi and his successor, Donna Sullivan, instructed another employee, Special Agent Santiago, to review all of Bloomquist's work, and that Sullivan reassigned one of Bloomquist's investigations to Santiago. Sullivan resumed the documentation and counseling sessions initiated by Gagliardi. Bloomquist also claimed that she was retaliated against for filing an EEOC complaint against Gagliardi.

   The July 4, 1990 complaint alleged that Bloomquist suffered discrimination based on her gender, a perceived mental handicap, and was subjected to reprisal for complaining to the EEOC. Bloomquist asserted that Sullivan placed a memorandum in Bloomquist's file stating that several people believed Bloomquist was suicidal. Bloomquist also claimed that she was placed on administrative leave, her firearm was temporarily removed, agency officials threatened to have her followed, she was instructed not to meet with

   EEOC officials, and was subjected to continued scrutiny of her performance.

   In her July 15, 1990 complaint, Bloomquist alleged that she was issued a ninety day warning letter to correct her performance or be discharged and that she was given an unacceptable rating for her performance during the annual rating period of May 1989 to June 1990.

2. If an appeal to the EEOC is filed, the complainant retains the right to file a civil action in the appropriate district court within ninety days of receipt of the EEOC's final decision or, if there has been no EEOC decision, within one hundred and eighty days from the date of filing the appeal. *See Occidental Life Insurance Co. v. EEOC*, 432 U.S. 355, 361, 97 S.Ct. 2447, 2452, 53 L.Ed.2d 402 (1977).

3. Bloomquist also filed a claim regarding the denial of her within-grade pay increase in September, 1990 with the United States Merit Systems Protection Board under 5 U.S.C. § 7702. The Board denied her claim on May 14, 1991, and notified Bloomquist of her right to seek judicial review of the decision within thirty days of June 18, 1991. Bloomquist appealed the Board's decision, but was unable to follow through with the appeal as she could not meet the time limits within which to complete her

quist's complaint alleged that Sullivan published a defamatory memorandum in her IRS personnel file, as previously discussed in Bloomquist's EEOC complaint of July 4, 1990. The action was removed to this court on March 22, 1991. Motions to substitute the United States as the sole defendant and to dismiss the action were filed on March 29, 1991. Bloomquist filed a memorandum in opposition and cross-moved to remand the case to New York Supreme Court on May 13, 1991. After a hearing on October 18, 1991, the motions were submitted to the court for decision. On March 31, 1992, the Honorable William M. Skretny granted the motion to substitute the United States as the proper defendant, and also granted Defendant's motion to dismiss on grounds of sovereign immunity. *See* Decision and Order, 91–CV–182S, dated March 31, 1992. Judgment dismissing the action was entered on April 2, 1992.

Bloomquist, thereafter, filed this action on October 19, 1992, naming Nicholas F. Brady, the Secretary of the Treasury, as defendant alleging that she was discriminated against based on her gender in violation of Title VII, 42 U.S.C. § 2000e, *et seq.* Defendant's answer was filed on April 14, 1993.

On July 15, 1993 Plaintiff served on Defendant a Notice for Discovery and Inspection; an Amended Notice for Discovery and Inspection was served on Defendant on July 21, 1993. A stipulation was filed on August 8, 1993, granting the Defendant a thirty-day extension to produce the documents requested.

Defendant responded to Plaintiff's discovery requests on September 21, 1993. However, Defendant declined to provide the internal investigatory files of Anthony Gagliardi.

Bloomquist filed a motion to compel disclosure of discovery materials and for sanctions on January 6, 1994. By order dated March 10, 1994, Defendant was requested to submit Gagliardi's Personnel File to the court for *in camera* inspection; the file was submitted to the court on March 16, 1994 and an *in camera* review was thereafter conducted.

On March 21, 1994, Defendant filed a motion requesting a protective order to prevent discovery of Gagliardi's personnel file and alleging that the information requested is irrelevant, privileged, overly broad, unlikely to lead to admissible evidence, and unduly prejudicial. Oral argument was held April 20, 1994. In the accompanying Decision and Order, dated March 10, 1995, this court granted, in part, the Plaintiff's motion to compel, and denied Plaintiff's motion for sanctions and Defendant's request for a protective order.

Defendant filed, on April 25, 1994, a motion to dismiss or for summary judgment. Plaintiff subsequently filed, on July 18, 1994, a cross-motion to amend the complaint. Plaintiff's cross-motion was also denied in this court's decision and order dated March 10, 1995. Oral argument was held on Defendant's motion on October 31, 1994.

For the reasons stated below, Defendant's motion, treated as a motion for summary judgment, should be GRANTED.

### FACTS [4]

Diane Bloomquist is employed as a Criminal Investigator (Special Agent) in the Criminal Investigation Division of the IRS, Buffalo District. She began her employment as a "co-op" student on May 22, 1978, and competitively progressed until she became a Special Agent in September, 1988. At the time in question, she was one of two female Special Agents, of a total of eleven agents in her unit.

In her EEOC complaints, Bloomquist asserted that she was subjected to verbal abuse by Special Agent Anthony Gagliardi in several closed-door job counseling sessions held between December 20, 1989 and January 10, 1990. Bloomquist also stated that the harassment began in 1984, when Gagliardi was acting as her group manager, and that he entered several negative job performance

---

appeal. *See* Complaint, filed October 19, 1992, at ¶ 13, p. 19.

4. Unless otherwise indicated, the facts are taken from the Title VII Complaint, filed October 19, 1992, and the Recommended Decision of the ALJ ("Recommended Decision").

memoranda in her personnel file. Bloomquist alleges that she had no performance problems under the supervision of Robert Ludwig, her supervisor prior to Gagliardi, who rated her as "fully successful" for the period from 1985 through 1989.

In 1987, Bloomquist gave an affidavit to an EEO investigator concerning Gagliardi's treatment, but did not give specific details for fear of retaliation. However, Bloomquist also indicated that Gagliardi was no longer in a position to adversely affect her employment, as Ludwig was her group manager. Bloomquist believes that the 1987 EEO affidavit was the basis of the continued harassment once Gagliardi was made group manager in December 1989.

According to Bloomquist, Gagliardi conspired with Donna Sullivan, Assistant Division Chief of the Criminal Investigation Division of the IRS, to sabotage Bloomquist's career by removing her from the premium pay roster,[5] reassigning an important grand jury investigation to which she was assigned,[6] accusing her of telling other employees that he was "out to get her," placing negative performance memoranda in her personnel file, and conducting closed-door sessions.

Bloomquist claims that she was subjected to employment discrimination on the basis of her gender, in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*

### DISCUSSION

Summary judgment will be granted pursuant to Fed.R.Civ.P. 56 when the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). The party moving for summary judgment bears the burden of establishing the nonexistence of a genuine issue of material fact. If there is any evidence in the record based upon any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party cannot obtain a summary judgment. *Celotex, supra,* 477 U.S. at 331, 106 S.Ct. at 2557.

The function of a district court in considering a summary judgment motion is not to resolve disputed issues of fact, but to determine whether there is a genuine issue to be tried. *Rattner, supra,* at 209. In assessing the record, including any affidavits, exhibits, and other submissions, the court is required to resolve all ambiguities and to draw all factual inferences in favor of the nonmoving party. *Anderson, supra,* 477 U.S. at 255, 106 S.Ct. at 2513–14; *Rattner, supra,* at 209.

As matters extrinsic to the pleadings have been presented to and not excluded by the court, and the parties have been given reasonable opportunity to present all material pertinent to the issues raised by this motion, the court will treat the motion as one for summary judgment. *See National Association of Pharmaceutical Manufacturers, Inc. v. Ayerst Laboratories, Division of/and American Home Products Corp.,* 850 F.2d 904, 911 (2d Cir.1988).

In her complaint, Bloomquist alleged that Defendant, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Defendant argues that summary judgment

---

**5.** The premium pay roster allows an agent to earn extra salary for working overtime hours.

**6.** An Assistant United States Attorney who was working on the investigation, requested that a more senior Special Agent be assigned to assist Bloomquist in the investigation, specifically to interview witnesses. Bloomquist was subsequently notified that the government attorney was dissatisfied with her work and had requested a more experienced agent to assist in the investigation. Bloomquist spoke with the attorney, ex-

pressing her concerns that his statements may have been misconstrued by the agency officials as deficiencies in her job performance. Thereafter, the attorney issued a memorandum to Gagliardi expressing his satisfaction with her performance. Gagliardi then accused Bloomquist of trying to cover up a poor investigation by soliciting a complimentary memorandum from the attorney. Gagliardi reassigned the investigation to another agent later that day. *See* Recommended Decision, at pp. 8–11.

should be granted with respect to Plaintiff's complaint as this action is barred by *res judicata.*

"Under the doctrine of *res judicata,* a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). "Such a judgment precludes the subsequent litigation both of issues actually decided in determining the claim asserted in the first action and of issues *that could have been raised* in the adjudication of that claim." *National Labor Relations Board v. United Technologies Corp.,* 706 F.2d 1254, 1259 (2d Cir.1983) (quoting 1B Moore's Federal Practice ¶ 0.405[3], at 631–62) (emphasis added).

■ In an action between a single plaintiff and a single defendant, a valid final judgment on the merits bars a second action by the same plaintiff or his privy against the same defendant or his privy, on the same cause of action. *See* 1B Moore's Federal Practice ¶ 0.410[1] at p. 171. A judgment will have conclusive force between persons who were parties to the litigation, but does not bind persons who are not bound by the judgment. Therefore, in order for *res judicata* to apply, there must be "identity of parties." *See* 1B Moore's Federal Practice ¶ 0.410[1] at p. 171.

■ Identity of parties is achieved in this suit as Bloomquist sued the United States government or those in privity with it in both cases. In the previous case ("Bloomquist I"), Bloomquist brought an action in the New York State Supreme Court against Donna Sullivan. The action, as noted, was removed to this court on March 22, 1991. As Sullivan was a group manager of the Criminal Investigation Division of the IRS, the United States government was substituted as the sole defendant following removal. In the present case, filed October 19, 1992 ("Bloomquist II"), Nicholas Brady, the Secretary of the Treasury, was named as the defendant. Caselaw holds that privity exists between officers of the same government. *See Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 402–403, 60 S.Ct. 907, 916–917, 84

L.Ed. 1263 (1940); *United States v. Rogers,* 960 F.2d 1501, 1509 (10th Cir.1992); *Cullen v. Paine Webber Group, Inc.,* 689 F.Supp. 269, 278 (S.D.N.Y.1988). *See also Warren v. McCall,* 709 F.2d 1183, 1185 (7th Cir.1983) (privity found between prison chaplains in Texas and Illinois for *res judicata* purposes because all chaplains were employees of the United States Bureau of Prisons). A suit between a party and a representative of the United States is barred by the doctrine of *res judicata* if there is relitigation of the same issue between the party and another officer of the government. *See Micklus v. Greer,* 705 F.2d 314, 317 (8th Cir.1983); *Mathis v. Laird,* 457 F.2d 926, 927 (5th Cir.1972); *Index Fund v. Hagopian,* 677 F.Supp. 710, 715 (S.D.N.Y.1987) (citing *Montana v. U.S.,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979)). Therefore, as the Secretary of the United States Treasury is an officer of the United States government, he is also in privity with the United States. Thus, the parties in Bloomquist I and Bloomquist II are the same or in privity for purposes of *res judicata.*

■ For *res judicata* to bar a subsequent action, the first suit and the subsequent case must involve the same cause of action. If the two suits center on the same transaction or series of transactions, or they arise from a " 'single core of operative facts,' " the doctrine of *res judicata* applies. *Norman v. Niagara Mohawk Power Corporation,* 873 F.2d 634, 638 (2d Cir.1989) (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 789 F.2d 589, 596 (7th Cir.1986)). The Supreme Court has specifically held that *res judicata* applies not only to the matters actually presented, but also as to any other matter that might have been presented. *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414–415, 66 L.Ed.2d 308 (1980). *See also Norman, supra,* at 638.

Bloomquist argues that there is no identity of actions because she stated different claims for relief. *See* Plaintiff's Responsive Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, filed July 18, 1994, at p. 6. In Bloomquist I, dismissed by Judge Skretny on March 31, 1992, Bloomquist alleged causes of action for libel and

infliction of emotional distress based on Donna Sullivan's scrutiny of her work and a memorandum written by Sullivan stating that she believed Bloomquist might be suicidal. Additionally, the complaint alleged that Sullivan rated Bloomquist's performance as substandard and conducted frequent job counseling sessions. *See* Defendant's Memorandum of Law in Support of Dismissing this Action, filed April 25, 1994, Exhibit J, ¶ 13 ("Bloomquist I Complaint"). In Bloomquist I, Bloomquist also asserted that Sullivan's purpose "was to punish and retaliate against [Bloomquist] because [she] filed discrimination and reprisal complaints against [Sullivan] and another supervisor," and to find fault with her performance. *See* Bloomquist I Complaint, at ¶ 13. Bloomquist also alleged that Sullivan rated Bloomquist's performance as substandard, *see* Bloomquist I Complaint at ¶ 13, engaged in unjustified criticisms of Bloomquist, and conducted baseless counselling sessions as a pretext for harassing Bloomquist in retaliation for her filing EEOC complaints against the agency. *See* Bloomquist I Complaint at ¶ 13. Bloomquist also referred to her ninety-day warning letter, her leave restriction, and the denial of her within-grade pay increase as part of the agency's conduct to undermine and destroy her career in retaliation for Bloomquist's filing EEO complaints. *See* Bloomquist I Complaint, ¶¶ 14, 22.

In Bloomquist II, Bloomquist alleges specifically that she was discriminated against based on her gender. However, it is clear that the Bloomquist II complaint is based on the same conduct and matters she asserted in her first cause of action against Donna Sullivan. Bloomquist asserted that several negative performance memoranda were placed in her personnel file, she was subjected to frequent job counselling sessions and security reviews, received ninety-day and sixty-day warning letters, and was retaliated against for filing complaints with the EEOC. *See* Bloomquist II Complaint, filed October 19, 1992, at ¶ 13. All of the claims which Bloomquist alleges in both Bloomquist I and Bloomquist II arise out of the same set of operative facts, the facts set forth in Bloomquist's original EEO complaints. If all of these fact issues were resolved in favor of Plaintiff in the Bloomquist I action, there would be no remaining bases for any claim of gender discrimination. *Flores v. Edinburg Consolidated Independent School District,* 741 F.2d 773, 777 (5th Cir.1984). As the two actions are based on the same facts, the second action is barred.

As it is the substantial identity of facts surrounding the occurrence which constitutes the cause of action, rather than the legal theories which the plaintiff chooses to put forth in her complaint, this court was, for purposes of *res judicata* analysis, presented with Bloomquist's present Title VII cause of action in her original suit. *Woods v. Dunlop Tire Corp.,* 972 F.2d 36, 39 (2d Cir.1992). Further, although Bloomquist added subsequent discriminatory acts when she filed her Title VII claim in Bloomquist II, *res judicata* nevertheless applies to the Bloomquist II complaint. *Woods, supra,* at 38 (even though some of the acts alleged in the second suit occurred up to a year after the dismissal of the first action, it is readily apparent that they were all part of the same cause of action and arose from a single core of operative facts) (citing *Grubb v. Public Utilities Commission of Ohio,* 281 U.S. 470, 479, 50 S.Ct. 374, 378, 74 L.Ed. 972 (1930)).

The court rejects Bloomquist's contention that there is no identity of actions because she stated different claims for relief. "Under modern principles of *res judicata,* a party cannot split [her] claim by first seeking one type of remedy in one action and later asking for another type of relief in a second action." *Headley v. Bacon,* 828 F.2d 1272, 1276 n. 3 (8th Cir.1987) (quoting *Roy v. City of Augusta,* 712 F.2d 1517, 1517 (1st Cir. 1983)). *See also* RESTATEMENT (SECOND) OF JUDGMENTS §§ 24 and 25.

A plaintiff may not split her underlying cause of action and pursue various legal theories in separate suits. As the claims in Bloomquist II arise from the same set of operative facts as those asserted in Bloomquist I, Bloomquist could have raised these claims in her previous suit. *Gray v. Lacke,* 885 F.2d 399, 404–405 (7th Cir.1989), *cert. denied,* 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990) (the doctrine of *res judi-*

*cata* bars "not only those issues that the parties actually litigated, but also any issue which the parties could have raised in the prior action.") Bloomquist had, in the Bloomquist I action, a full and fair opportunity to select and present her legal theories, and to fully litigate her case; however, she presented only claims of libel and infliction of emotional distress in the first action.

■ Additionally, Bloomquist suggests, incorrectly, that she could not pursue her Title VII action in state court, which is where Bloomquist I was originally filed, as her Title VII claim could have been brought in state court. *See Yellow Freight System, Inc. v. Donnelly,* 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990) (a Title VII claim can be advanced in a state court suit, as state courts exercise concurrent jurisdiction with federal courts over such claims). As sovereign immunity is no defense to a claim based on Title VII, Bloomquist nevertheless could have obtained full and fair consideration of her complaint if she had joined her Title VII claim to her state claims. *See Flores, supra,* at 777–778 n. 5. Therefore, as the claims of employment discrimination attempted to be raised in Bloomquist II could have been raised in the earlier action and arise out of the same core of operative facts, they must be held barred by *res judicata. See Grubb, supra,* 281 U.S. at 479, 50 S.Ct. at 378; *Spiegel v. Continental Illinois National Bank,* 790 F.2d 638, 645–646 (7th Cir.1986). As the Court in *Grubb* stated, "[litigants] must abide by the rule that a judgment upon the merits in one suit is *res judicata* in another where the parties and subject matter are the same, not only as respects matters actually presented to sustain or defeat the right asserted, but also as respects any other available matter which might have been presented to that end." *Grubb, supra,* 281 U.S. at 479, 50 S.Ct. at 378.

■ In assessing the preclusive effect of a prior judgment for *res judicata* purposes, the court must also determine whether the earlier determination constituted a final judgment on the merits of the case, and whether the case was brought before a court of competent jurisdiction. *Harborside Refrigerated Services, Inc. v. Vogel,* 959 F.2d 368, 372 (2d Cir.1992); *In re Teltronics Services, Inc.,* 762 F.2d 185, 190 (2d Cir.1985). The court notes that Bloomquist does not suggest that the judgment rendered by Judge Skretny on March 31, 1992 in the Bloomquist I action, and entered on April 2, 1992, was not final.

■ Bloomquist contends, rather, that the judgment in Bloomquist I did not constitute a decision on the merits of the case. *See* Plaintiff's Responsive Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, filed July 18, 1994, at pp. 1–8. However, a judgment on the merits for purposes of *res judicata* is not necessarily a judgment based upon a trial of contested facts; it may, for example, be a default judgment, a judgment on stipulation or agreement, or on a motion for summary judgment. *See* 1B Moore's Federal Practice at ¶ 0.409[1.–2.].

■ The Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680, provides sovereign immunity to the federal government for claims arising from libel, slander, misrepresentation and deceit. 28 U.S.C. § 2680(h). A dismissal based on sovereign immunity is a decision on the merits, as it determines that a party has no cause of action or substantive right to recover against the United States. *See Flores, supra,* at 775 n. 3 (dismissal of state action on sovereign immunity bars subsequent federal civil rights action); *Beaver v. Bridwell,* 598 F.Supp. 90, 93 (D.Md.1984) (state court dismissal of common law tort action on sovereign immunity bars subsequent Section 1983 action in federal court); *Warwick Corp. v. Maryland Department of Transportation,* 573 F.Supp. 1011, 1014 (D.Md.1983) (state court dismissal of common law tort action on sovereign immunity bars subsequent Section 1983 action in federal court). *See also Magnus Electronics, Inc. v. La Republica Argentina,* 830 F.2d 1396 (7th Cir.1987) ("the underlying policy of *res judicata* is not restricted to a valid judgment that deals solely with the merits; it extends to and includes matters in abatements, such as jurisdiction over subject matter . . .") (citing 1B Moore's Federal Practice ¶ 0.405[5] at 223); *J.C. Driskill, Inc. v. Abdnor,* 901 F.2d

383, n. 4 (4th Cir.1990) ("waiver of sovereign immunity is a jurisdictional prerequisite in the nature of, but not the same as, subject matter jurisdiction, in that unless sovereign immunity is waived, there may be no consideration of the subject matter").

Bloomquist argues that the district court's dismissal of her tort claim was based on a lack of subject matter jurisdiction, and thus, the merits of the case were never reached. However, Judge Skretny's decision was based on his determination that sovereign immunity precluded the federal government from being liable for claims which fall under the Federal Tort Claims Act. Therefore, the dismissal of Bloomquist I was based on Judge Skretny's finding that the United States was immune from suit, rather than a determination based on procedure or form.

■ A determination which was destructive of Bloomquist's cause of action and indicated that Bloomquist failed to state a claim under federal law is clearly a judgment on the merits and not for lack of jurisdiction. *See Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946); *Weston Funding Corp. v. Lafayette Towers, Inc.,* 550 F.2d 710, 715 (2d Cir.1977). As stated by Justice Black:

Jurisdiction, therefore, is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action *calls for a judgment on the merits* and not for a dismissal for want of jurisdiction. *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) (emphasis added).

*See also The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913) ("Jurisdiction is authority to decide the case either way.") (Holmes, J.).

■ Further, in *Weston,* the Second Circuit considered, in determining whether the dismissal by the district court was on the merits, whether the first court's reason for dismissing the claim was that the plaintiff had no cause of action. *Weston Funding Corp., supra,* at 713. The court stated that, unlike jurisdictional statutes, the intended effect of the state statute involved in the case, precluding access to the court by unlicensed real estate agents, was not to create a precondition to the suit, but to completely void the underlying cause of action. *Weston Funding Corp., supra,* at 714. As the court in *Weston* stated, " 'it is well settled that the failure to state a proper cause of action calls for a judgment on the merits.' " *Weston Funding Corp., supra* (citing *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946)). Relying on Fed.R.Civ.P. 41(b), the court affirmed the summary judgment in favor of defendant on the ground that the prior dismissal of Plaintiff's original action based on Plaintiff's disqualification to sue in New Jersey under state law, was a prior adjudication on the merits and barred, as *res judicata,* subsequent suits on different claims. The Second Circuit noted that amendments to Rule 41 had greatly expanded the grounds for dismissal that, under the rule, would constitute judgment on the merits. *Weston, supra,* at 713. Rule 41(b) provides that when the court provides in its order otherwise any dismissal other than one for lack of jurisdiction, improper venue, or failure to join an indispensible party "operates as an adjudication on the merits." Fed. R.Civ.P. 41(b). As Judge Skretny's order did not preserve any right by Plaintiff to file any further claims relating to the same core of facts upon which that action was based, it is clear that the dismissal bars the instant action (Bloomquist II). As the court in *Weston* stated, "the Supreme Court has made clear that [i]t is a misconception of *res judicata* to assume that the doctrine does not come into operation if a court has not passed on the 'merits' in the sense of the ultimate substantive issues of a litigation." *Weston, supra,* at 714 (quoting *Angel v. Bullington,* 330 U.S. 183, 190, 67 S.Ct. 657, 661, 91 L.Ed. 832 (1947)).

Accordingly, the dismissal of the Bloomquist I action based on sovereign immunity constituted a decision on the merits, rather than a dismissal for lack of jurisdiction.

Bloomquist also asserts that the judgment in Bloomquist I was not granted by a court of competent jurisdiction since her initial ac-

tion was brought in state court and her employment discrimination claim could not have been maintained there. *See* Plaintiff's Responsive Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, filed July 18, 1994, at p. 10. As discussed, this is an incorrect statement. *See supra,* at p. 14. Regardless of this fact, once Bloomquist was aware that the Defendant intended to remove the action, she could have asserted her employment discrimination claims in this court by filing a motion to amend her complaint, and subsequently requesting a stay of the proceedings pending the outcome of the administrative action. Defendant's motion to dismiss was filed on March 29, 1991. As oral argument on the motion occurred on May 20, 1991, and the court's decision was not rendered until March 31, 1992, Bloomquist had sufficient time, prior to any decision, to present her alternative federal claims for recovery. *See* Defendant's Reply and Response Memorandum of Law, filed August 10, 1994, at p. 8.

The federal court was competent to hear both Bloomquist's tort and employment discrimination actions. Only federal courts have jurisdiction over cases involving the federal government as a party, therefore, Bloomquist I was properly before Judge Skretny, as the case involved a tort-based cause of action against the United States. 28 U.S.C. §§ 2671–2680. Further, Judge Skretny made a decision on the merits of Bloomquist's tort claims, which led to the dismissal of the case as the court found that the federal government was immune from suit as to Bloomquist's particular tort claims under the Federal Tort Claims Act. Thus, Judge Skretny had jurisdiction over Bloomquist's original tort action and the court was a court of competent jurisdiction. Therefore, as the decision on Bloomquist's tort claim was made in a court of competent jurisdiction, it is a predicate decision for *res judicata* purposes and may, as here, bar a subsequent action.[7]

As a final judgment on the merits was rendered by a court of competent jurisdiction in Bloomquist I, and the same parties or their privies were involved in both Bloom-

quist I and Bloomquist II, the court finds that *res judicata* is a complete bar to Bloomquist II as it is based upon the same set of operative facts as Bloomquist I. Therefore, for purposes of judicial economy, fairness to the litigants and the strong public interest favoring finality in judicial proceedings and against piecemeal litigation, this case should be dismissed.

### CONCLUSION

Based on the foregoing discussion, Defendant's motion for summary judgment should be GRANTED.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 30(a).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

DATED: March 10, 1995

Buffalo, New York

---

7. The court notes that if Bloomquist commenced her employment discrimination claim in her original suit, she would now be barred by res judicata from bringing her tort cause of action.