**Donald E. MORTELL, et al., Plaintiffs–Appellants,**

v.

**MORTELL COMPANY, et al., Defendants–Appellees.**

No. 89–1190.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 26, 1989.

Decided Oct. 26, 1989.

---

Gill M. Garman, Sebat, Swanson, Banks, Garman & Townsley, Danville, Ill., Scott Swaim, Swaim & Swaim, Kankakee, Ill., for plaintiff-appellant Donald E. Mortell.

Stephen R. Swofford, Nancy G. Lischer, D. Kendall Griffith, Thomas S. Malciauskas, Douglas M. Reimer, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for defendants-appellees Mortell Co., James W. Mortell and Ramon J. Mortell.

Thomas J. McCarthy, Donald R. Harris, Jenner & Block, Michael L. McCluggage, Brian Rocca, Wildman, Harrold, Allen & Dixon, Chicago, Ill., Everett Laury, Danville, Ill., for defendant-appellee Addis E. Hull.

Before COFFEY and EASTERBROOK, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

The brothers Mortell (Donald, James, and Ramon) were equal owners of Mortell Company. Until 1981 Donald was the President and Chief Executive Officer, James was Chairman of the Board, and Ramon was Chief Operating Officer. Mortell Company has been profitable, and its wealth has severed familial bonds.

## I

In 1981 Donald fell behind in paying off a loan, which he had secured by a pledge of some Mortell Company stock. The bank foreclosed and sold the stock to the firm and its pension plan. Donald tried to repurchase these shares but eventually executed an agreement by which he sold his remaining stock and severed ties to the firm. Mortell Company and several affiliates (a detail we disregard, treating the buyers as a single firm) bought all of Donald's remaining stock (and the stock held by his seven children, another detail we ignore) for $6,558,714. It promised to pay more in the event the firm was sold before December 31, 1987. The critical provisions calculated the sum this way:

A. (2) One-half (½) of 29.8347% of the sales price ... in excess of $15,895,116 if the [Company is] sold after December 31, 1984, and prior to December 31, 1987.

(3) The amount determined ... shall be reduced (but to not less than –0–) by $844.51 multiplied by the number of days between December 1, 1981, and the closing date of the sale....

.    .    .    .    .

B. In no event will the payment under this paragraph ... exceed the sum of $2,000,000.

.    .    .    .    .

G. The percentages set forth in subparagraph A ... have been computed on the basis that at the time of any sale ... James W. Mortell and his family will own 42.520695% of the equity ... and Ramon J. Mortell and his family will own 42.520695% of the equity.... Notwithstanding anything to the con-

trary in subparagraph A ..., it is understood and agreed among the parties that the purpose ... is to treat [Donald and his family] in an equal and equitable manner with [Ramon, James, and their families].... [T]he percentages set forth in subparagraph A ... shall be revised as may be appropriate for such percentages to reflect equal and equitable treatment of [Donald and his family], considering the actual percentage ownership ... by James W. Mortell and Ramon J. Mortell and their respective families.

In April 1986 another firm purchased all outstanding stock of Mortell Co. for $30.9 million. Mortell Co. concluded that it owed Donald $1.2 million after computing the sum due under paragraph A(2) and subtracting the amounts provided by paragraph A(3). Donald contended that because of the "equal and equitable manner" language of paragraph G he was entitled to one third of the $10.9 million, less what he had already received, plus another $1.9 million, representing one third of the distributions ($5.8 million) his brothers had received between 1981 and 1986. That came to a total of $5.1 million, almost $4 million more than he had been offered. James and Ramon replied that paragraph G came into play only if their stakes in the firm changed, and that Donald's payment was at all events subject to the $2 million cap set in paragraph B. Lucre has sundered many a family, and this $4 million difference of opinion exceeded the cohesion of the Mortell clan.

In June 1986 Donald filed suit in an Illinois court against his brothers and Mortell Co. The complaint alleged that the defendants broke the agreement. In March 1987 Donald filed a second suit, this time in federal court, naming as defendants his brothers, Mortell Co., and Addis E. Hull, a partner of Jenner & Block (the firm's corporate counsel). This complaint alleged that the course of conduct by which Mortell Co. obtained the stock and tendered so little in return violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68. The only allegation in the complaint, as finally amended, adding to the facts we have recounted says:

> ... [T]he named defendants employed the United States Mail in filing reports, conducting negotiations, entering into various agreements, offering and receiving legal advice, as previously stated, so as to conceal their activities and intentions ..., all in violation of 18 U.S.C. Sec. 1341 [proscribing mail fraud].

Because the complaint failed to plead fraud with "particularity"—indeed to identify any fraud—it could have been dismissed forthwith under Fed.R.Civ.P. 9(b). *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 818 (7th Cir.1987); see *Mid–State Fertilizer Co. v. Exchange National Bank*, 877 F.2d 1333, 1337 (7th Cir.1989) ("to break a promise is not to commit fraud").

In October 1988 the state court granted the defendants' motion for summary judgment. *Mortell v. Mortell*, No. 86–L–125 (21st Cir. Kankakee Cnty. Oct. 13, 1988). Judge Gould concluded that the contract is unambiguous and that under its terms Donald was entitled to only $1.2 million. Moreover, the judge concluded, James and Ramon could not have been liable in any event because they were not parties to the contract. James signed only in his capacity as an officer of Mortell Co., and Ramon did not sign at all. Because Donald had not established any ground for piercing the corporate veil, James and Ramon could not have been personally responsible for the corporation's obligations.

Back in federal court, the defendants moved for summary judgment on the ground of claim preclusion (res judicata). Donald could have pleaded fraud in the state case but neglected to do so. Because judgments are preclusive on all arguments arising out of a single claim that were *or could have been* raised, *Cromwell v. County of Sac*, 94 U.S. (4 Otto) 351, 24 L.Ed. 195 (1877); *Housing Authority v. YMCA*, 101 Ill.2d 246, 251–52, 78 Ill.Dec. 125, 128, 461 N.E.2d 959, 962 (1984), Donald's omission was fatal to the federal case. Chief Judge Baker accepted this argument, adding that although Hull had not been party to the state case, he was a privy of

Mortell Co. and thus could plead the state judgment as a bar.

■ Donald could have raised in state court the same claim of fraud that underpins his RICO action. Fraud and breach of contract are alternative legal theories for redress of the same wrong. Under Illinois law, which governs here, 28 U.S.C. § 1738, failure to plead fraud in the first suit bars a second litigation. Although proof of fraud would entail different facts from proof of breach of contract, and although some Illinois cases use identity of facts as the trigger for claim preclusion, we decided long ago that the dominant line of cases in Illinois adopts the "nucleus of operative facts" approach rather than the "identity of facts" approach. See *Lee v. City of Peoria*, 685 F.2d 196, 199–200 (7th Cir. 1982); *Hagee v. City of Evanston*, 729 F.2d 510, 513–14 (7th Cir.1984); *Frier v. City of Vandalia*, 770 F.2d 699, 701–02 (7th Cir. 1985); *Durhan v. Neopolitan*, 875 F.2d 91 (7th Cir.1989). One series of related transactions is a single "nucleus of operative facts". All theories of liability concerning the same transaction or series of acts should be litigated in the same suit to conserve everyone's time and energy and minimize the prospect of inconsistent judgments. Donald's hurt came from the inadequacy of the payment (as he sees things) after the acquisition, coupled with the possibility that his brothers intended all along to gyp him after he handed over the reins. He does not claim to be the victim of an unrelated fraud. One full and fair adjudication is enough; Donald has had his.

Donald contends that RICO actions are different, because RICO provides (he says) for exclusive federal jurisdiction. This creates the possibility that Illinois would not deem a judgment preclusive in a later RICO action because the first court lacked jurisdiction over the subject matter. Cf. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). We have not decided whether federal courts have exclusive jurisdiction of RICO cases, a subject that has divided the courts of appeals. Compare *Chivas Products Ltd. v. Owen*, 864 F.2d 1280 (6th Cir.1988) (exclusive federal jurisdiction), with *Tafflin v. Levitt*, 865 F.2d 595, 600 (4th Cir.), cert. granted, —— U.S. ——, 109 S.Ct. 2428, 104 L.Ed.2d 985 (1989) (state courts may entertain RICO actions). Because one Illinois court has refused to decide a RICO action, *Washington Courte Condominium Ass'n v. Washington–Golf Corp.*, 150 Ill.App.3d 681, 690–91, 103 Ill.Dec. 752, 758–59, 501 N.E.2d 1290, 1296–97 (1st Dist.1986), Donald believes that the state courts would permit him to litigate contract and RICO claims sequentially.

Unfortunately for Donald, we rejected this very argument in a case involving a judgment from Illinois. *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1234–35 (7th Cir.1986). RICO is a compound offense. The plaintiff must show the predicate crime (Donald chose mail fraud) and then establish a pattern involving an enterprise. Even if federal courts have exclusive jurisdiction over this assemblage of questions, they certainly do *not* have exclusive jurisdiction over the predicates. Predicate crimes listed in RICO include many offenses against state laws, 18 U.S.C. § 1961(1), and many of the predicate offenses are themselves compound (mail fraud, for example, being fraud—in most cases as states understand fraud—plus the federal element of the mails). If claim preclusion knocks out the predicate offense, that a RICO action may belong in federal court does not matter.

Questions of fact not litigated in the first case may be pursued in a second on a different claim: *issue* preclusion applies only to questions actually and necessarily decided in the first case. Fraud is not a discrete "issue" in a broader RICO "claim", however. Compound offenses are made up of many "claims", each of which may be barred by omission in earlier litigation even if the law of issue preclusion (collateral estoppel) would not come into play. We concluded in *Henry* that the state law of claim preclusion would KO the contention that the defendants committed fraud; we therefore held that the RICO claim itself failed. Today's case is no different.

Donald insists that even if Mortell Co. is off the hook, his brothers and attorney Hull may not obtain the benefit of the state judgment. Hull was not a party to the state case. James and Ramon, while parties, escaped liability on the ground that officers and shareholders are not liable for corporate debts. Because this showed, Donald insists, that James and Ramon were "not proper parties" to the state case, they may be pursued in the current case.

Hull was not a party to the state case, but Donald does not contend that Hull defrauded him directly. Hull gave advice to Mortell Co., which may have acted on it. We very much doubt that Illinois holds attorneys personally liable to third parties for action taken in reliance on legal advice, but if state law allows such an approach the liability is derivative. It depends on the client's actions wrongfully injuring someone. Hull therefore could be liable only through the acts of Mortell Co., and because Mortell Co. has prevailed against Donald, Hull too is entitled to judgment. *Lee v. City of Peoria,* 685 F.2d at 199–200 n. 4; *Towns v. Yellow Cab Co.,* 73 Ill.2d 113, 122–24, 22 Ill.Dec. 519, 523–25, 382 N.E.2d 1217, 1221–23 (1978). *Henry,* like our case, involved a state suit against the client followed by federal litigation against client, officers, and counsel; *Henry* exonerated all of the federal defendants and again governs.

As for the claim against James and Ramon: Donald confuses lack of jurisdiction with losing on the merits. Judge Gould did not dismiss the state case against James and Ramon for lack of jurisdiction over the defendants or the subject matter. He granted summary judgment on the merits in their favor, on alternative grounds—that Mortell Co. had kept its promises, and that Donald had not met the conditions necessary to hold officers and investors liable on corporate obligations. That James and Ramon won on two grounds hardly shows that they were not proper parties to the litigation; it shows, rather, that Donald's claim against them was doubly flawed. Corporate officers and investors may be held to answer for corporate obligations if the plaintiff proves certain things; Donald

didn't. Donald seems to believe that only the *winner* in the state case is precluded from litigating a second time. Hardly. The state court's decision was on the merits, which bars further efforts. *American National Bank & Trust Co. v. City of Chicago,* 826 F.2d 1547, 1552–53 (7th Cir. 1987) (collecting and interpreting Illinois law).

## II

■ One aspect of Donald's complaint survives the preclusive force of the state decision. Count II of the federal complaint maintained that Mortell Company's pension plan violated the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461, by purchasing an obligation of Mortell Co. and by investing imprudently in high-risk securities of other firms. Donald says he is a participant in this plan and demands relief. This ERISA claim grows out of the management of the plan rather than the sale of Donald's stock to Mortell Co. and the subsequent sale of that enterprise, and so it is not barred by omission to plead it in state court. The district judge bounced it out his door, however, on the ground that Donald had not exhausted his remedies within the plan.

*Dale v. Chicago Tribune Co.,* 797 F.2d 458, 466 (7th Cir.1986), holds that participants sometimes must exhaust remedies within the plan before filing suit. *Firestone Tire & Rubber Co. v. Bruch,* —— U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), holding that doctrines of trust law (a presumptive "de novo" standard) rather than administrative law (the "abuse of discretion" standard) govern review of decisions denying claims for benefits, may require us to revisit *Dale* eventually. Exhaustion is in most cases a doctrine of administrative rather than trust law, and if de novo review is appropriate the argument for exhaustion is weaker. So, too, we might have to ask whether a denial of a claim for benefits is a more appropriate subject of exhaustion than is a claim of the sort Donald presses—that the fiduciaries of the plan mismanaged it and so depressed the value of its assets. We needn't answer

these questions today, however, because Donald did not present them properly for our decision.

Rule 30(a) of this circuit's rules requires counsel to attach to the brief the opinion or oral statement supporting the judgment under review, and Circuit Rule 30(b) requires the inclusion in the separate appendix of all other pertinent opinions and explanations. Circuit Rule 30(c) requires counsel to certify compliance with Rules 30(a) and (b). Appellate courts must examine the district judge's explanations for their decisions; without these, we cannot intelligently prepare for argument or render a decision. Although counsel for appellants made the certificate required by Rule 30(c)—otherwise the Clerk would not have accepted the brief for filing—the certificate was false. No document attached to the brief contained the district judge's explanation for his decision, and appellants did not file a separate appendix. Neither the statement of facts nor the argument in Donald's brief makes good the omission. For all anyone could tell after reading the papers Donald filed, the district judge had no reason for dismissing the ERISA claim.

Yet the court gave a reason. Our search of the record turned up an opinion of Magistrate Kauffman, to whom Judge Baker referred the case. Magistrate Kauffman recommended that the court dismiss the complaint for failure to exhaust, adding:

> it is incumbent upon a plaintiff to plead circumstances under which he would not be required to exhaust remedies, if indeed exhaustion is discretionary with the Court[, as plaintiffs contend it is]. In the present complaint, the plaintiffs have failed to state why they should not be required to exhaust remedies in this case.

Judge Baker adopted this report. Donald then filed an amended complaint, which makes no effort to plead circumstances excusing exhaustion. No surprise that when the plaintiffs did not even try to comply with the requirement the judge had imposed by adopting the magistrate's report, it was dismissed in due course. It may be that Judge Baker gave an oral explanation, but if so appellant has not ordered the transcript.

Donald's brief on appeal refers to none of this, although he belatedly attempts to supply in the brief the statement of reasons that Judge Baker wanted filed in his court. He did not even furnish the amended complaint. (Appellees filed a supplemental appendix containing the amended complaint and the state judge's opinion, another striking omission from Donald's papers.) A false certificate under Rule 30(c) is a sufficient reason to affirm without reaching the merits, and we follow that course. The court must be able to rely on counsel to furnish the district court's explanation of the decision under review. Our initial impressions about the issues presented were mistaken; the flaw (as Judge Baker saw things) was an omission in pleading rather than a substantive rule requiring exhaustion. Failure to follow our rules sometimes is fatal, see *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 315–16 (7th Cir.1986). Omitting materials that should have been in the appendix has been decisive in years past, see *Teitelbaum v. Curtis Publishing Co.*, 314 F.2d 94 (7th Cir.1963); *Sparrow v. Yellow Cab Co.*, 273 F.2d 1 (7th Cir.1959), and still is. See also Annotation, 55 A.L.R.Fed. 521 § 8(b) (1981 & 1988 Supp.).

## III

This is grudge litigation, and weak grudge litigation at that. Perhaps the contract suit had a bit of substance, though the state judge did not think so. Refusal to say die is a more serious matter. Duplicative litigation needlessly increases costs, both to the adverse parties and to the legal system. Donald persisted in litigating, even adding the firm's lawyer as a party. The federal complaint is conspicuously deficient. As we have observed, it does not identify any fraud and so fails the most basic requirement. Hull was added without benefit of a legal theory and without any realistic prospect of surviving a motion based on the statute of limitations. Hull's last appearance is in November 1981, with the signing of the contract; Illinois law

gives four years to sue, and Donald took six; a conspiracy among Hull, James, and Ramon might extend the time, but the complaint does not allege its existence or give reason to believe one existed. Neither complaint nor briefs makes the ERISA claim intelligible. For all we can tell, Donald has no remaining interest in the plan (or only a defined benefit package), so that the events of which he protests did not harm him. Moreover, the last identified investment decisions occurred more than six years before filing the complaint, giving color to the contention that the statute of limitations has run. These defects, coupled with briefs and other papers that suggest inattention to both facts and law, could have supported an award in the district court under Fed.R.Civ.P. 11.

Rule 11 does not apply directly in this court. Incautious language to the contrary in *Thornton v. Wahl*, 787 F.2d 1151, 1153 (7th Cir.1986), was retracted in *Hill v. Norfolk & Western Ry.*, 814 F.2d 1192, 1200 (7th Cir.1987), on the compelling ground that the Rules of Civil Procedure apply only to actions in the district courts. Rule 11's standards influence our decisions under Fed.R.App.P. 38, which allows us to impose sanctions for frivolous appeals, without governing. Under Rule 38 we may impose sanctions when appeals are taken without prospect of success. *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 938–39 (7th Cir.1989) (en banc). Donald's appeal was foredoomed. Deficiencies in both argument (the claim preclusion branch) and presentation (the ERISA branch) left only one possible outcome. Some of the arguments—such as the contention that preclusion did not benefit James and Ramon because they won on too many grounds in state court—reflect either lack of concern for legal doctrine or the obtuseness so common in spite matches. Cf. *Coleman v. Commissioner of Internal Revenue*, 791 F.2d 68 (7th Cir.1986). Even had there been something to the arguments Donald presented, fatal problems lurked in the record and would have prevented his gaining by the appeal.

The short of it is that Donald has wasted everyone's time: Chief Judge Baker's,

ours, and his adversaries'—and of course his adversaries' money. They hired two sets of expensive counsel (Hull needed to retain separate counsel to urge defenses unavailable to James and Ramon and, if appropriate, to point the finger at them). Needless litigation also injures parties in other cases, whose grievances fester while federal courts attend to bootless claims. Even a small chance of gaining $12 million (Donald's objective) can justify a lot of legal bills from a plaintiff's perspective, or generate them in defense; a treble damages claim under RICO may treble the expense of the case as well as the stakes.

Everything we can see suggests that the appeal is objectively frivolous, justifying an award of attorneys' fees as sanctions under Rule 38 without regard to Donald's motives. Because the appellees did not request sanctions, however, Donald's lawyers have not had an opportunity to address the subject, and our impressions may be insufficiently informed. We invite the parties to file memoranda within 15 days addressing the question whether sanctions are appropriate. The appellees should simultaneously file statements of the legal fees reasonably incurred in defending this appeal. Costs shall abide the decision on sanctions.

AFFIRMED.