David Jay STERLING, Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant–Appellee.

No. 95–1459.

United States Court of Appeals, Seventh Circuit.

Submitted March 19, 1996.

Decided June 3, 1996.

David Jay Sterling, Marion, IL, pro se.

James M. Hipkiss, Office of U.S. Atty., Civ. Div., Fairview Heights, IL, for U.S.

Before FLAUM, EASTERBROOK, and ROVNER, Circuit Judges.

EASTERBROOK, Circuit Judge.

■ The question presented by this case—which appears to be a novel issue—is whether someone who files and loses a *Bivens* suit against a federal employee is entitled to pursue a tort action against the United States. The district judge said no; we hold that the answer is yes and remand for proceedings on the merits.

David Jay Sterling alleges that, while he was a federal prisoner at Lewisburg, officer Miller either lost or intentionally destroyed a duffel bag full of legal materials. Sterling was sent to the "special housing unit." While he was there, four bags of possessions went to storage. When he was preparing his things for transfer to another prison, Sterling says, he discovered that one of the four had vanished. He wants compensation for the value of the missing property. He sued Miller in the Middle District of Pennsylvania. While the suit was pending, Sterling escaped from custody. Three months after Sterling's recapture, Judge Caldwell dismissed the suit against Miller as an application of the fugitive disentitlement doctrine. Sterling did not appeal but did commence another suit, this time against the United States, under the Federal Tort Claims Act. The new suit was filed in the Southern District of Illinois, for in the interim Miller had been transferred to Marion. Judge Stiehl observed that Judge Caldwell dismissed the suit with prejudice. Because Judge Stiehl viewed the *Bivens* and FTCA actions as identical claims, he held that Sterling's loss on the former meant that he must lose the latter too.

■ Both parties describe this as an application of "res judicata," and the United States relies on cases that forbid sequential claims against the same party. But of course Sterling has not sued the United States twice; he sued different parties, once apiece. (Actually, he has sued Miller twice, and the second suit against Miller has been dismissed on account of res judicata, but this is not material to the suit against the United States.) Using the same term for different sequences of litigation has a substantial potential for confusion, which is why the American Law Institute recommends the replacement of "res judicata" (and "collateral estoppel") by the more descriptive English phrases "claim preclusion" and "issue preclusion." See *Restatement (2d) of Judgments* (1980). Sterling has neither litigated nor lost any claim against the United States; we do not have an instance of merger and bar. Instead the United States seeks to take advantage of Sterling's failure in the litigation against Miller by interposing the defense usually called non-mutual issue preclusion ("non-mutual" because Sterling could not have used a victory in his suit against Miller as the basis of any relief against the United States). See *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Restatement* § 29. Liability under the Tort Claims Act is vicarious, and the United States wants to take advantage of the rule that, if an employee has been absolved of liability, there is no tort for which the employer can be vicariously liable. *Restatement* § 51.

■ The problem with applying this principle to the *Bivens*–FTCA sequence is that the two legal theories differ. Public liability under the FTCA does *not* depend on the employee's liability under *Bivens*. The FTCA creates a remedy for negligence and forbids relief on account of many intentional torts. 28 U.S.C. §§ 2674, 2680(h). The domain of *Bivens* in a case such as this, however, is limited to intentional deprivations. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct.

**1228**

1908, 68 L.Ed.2d 420 (1981), which held that a negligent loss of a prisoner's property violates the due process clause, was overruled on this point by *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). To obtain damages from Miller, therefore, Sterling had to show that Miller intentionally and without justification destroyed his property. Damages could be obtained from the United States on a lesser showing—that Miller negligently lost or destroyed Sterling's property. A victory for Miller therefore does not imply victory for the United States. Our sequence fits nicely the proviso in § 51(1)(a) of the *Restatement*, which covers cases in which the "claim asserted in the second action is based upon grounds that could not have been asserted against the defendant in the first action".

■ Although the United States readily could lose at the same time as Miller prevailed, it may be that both the United States and Miller should prevail. When denying Sterling's administrative claim under the FTCA, the Bureau of Prisons concluded that Miller destroyed the duffel bag and its contents because Sterling told him to do so:

> On March 6, 1992, you were ordered to report to the property room of the [Special Housing Unit] to inventory your personal property. At that time, you requested that a great deal of what you referred to as "excess paperwork" be destroyed by the officer. Your request was complied with and a[sic] inventory form was completed to verify the final disposition of the papers you requested be destroyed. Therefore, the only destruction of your papers at USP, Lewisburg were [sic] at your specific request.

Does Miller's victory establish that Sterling asked Miller to destroy the documents? Issue preclusion applies only to issues actually and necessarily resolved in the first case, *Cohen v. Bucci*, 905 F.2d 1111 (7th Cir.1990); *Mortell v. Mortell Co.*, 887 F.2d 1322 (7th Cir.1989); *Restatement* § 27, so the United States cannot take advantage of Miller's victory. Judge Caldwell did not actually find any fact in Miller's favor; any finding that Sterling asked Miller to destroy the property would not have been essential to that disposi-

tion. Had Judge Caldwell found that Miller intentionally destroyed the duffel bag, then a further finding that Sterling asked him to do so would have been necessary to a decision in Miller's favor. But Judge Caldwell did not reach the merits of Sterling's claim, so the kind of findings that would assist the United States were not made.

■ Judge Stiehl believed that Sterling was obliged to join the United States as a party to the initial action in Pennsylvania, but he did not cite any authority for that proposition. Victims are free to litigate separately against joint tortfeasors. *Temple v. Synthes Corp.*, 498 U.S. 5, 111 S.Ct. 315, 112 L.Ed.2d 263 (1990); *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955). Legal rules may make joinder difficult, and the FTCA is one of these. A victim is *forbidden* to file suit against the United States until first presenting an administrative claim. 28 U.S.C. § 2672. Failure to heed that requirement can cost a victim any opportunity to recover damages. *McNeil v. United States*, 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993). The Bureau of Prisons did not act on Sterling's administrative claim until shortly before the Pennsylvania case was dismissed. And the United States was in no position to make itself a party in the Pennsylvania case. Under the Westfall Act, the United States usually is substituted for a federal employee accused of committing a tort in the course of his duties; but the statute forbids substitution when the employee is alleged to have violated the Constitution, as Sterling accused Miller of doing. 28 U.S.C. § 2679(b)(2)(A). This also shows that Miller and the United States were not the "same party" on a virtual-representation theory. The Westfall Act keeps the United States and its employees distinct in constitutional-tort cases. The function of *Bivens* reinforces this understanding. Sterling's original action was against Miller in his personal rather than official-capacity. See *Stafford v. Briggs*, 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980). Miller would have paid any judgment personally; the point of *Bivens* was to establish an action against the employee to avoid the sovereign immunity that would block an action

against the United States, and thus would block an official-capacity action too. *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Miller and the United States therefore are not privies for purposes of the rules of preclusion. See *Charles Koen & Associates v. Cairo*, 909 F.2d 992, 999 n. 7 (7th Cir.1990); *Conner v. Reinhard*, 847 F.2d 384, 394–96 (7th Cir. 1988).

■■■■ Because the FTCA creates vicarious liability, a judgment in favor of the United States usually implies that the federal employee also is entitled to prevail, while a judgment against the United States implies that the victim has received full compensation. Congress has provided that litigation against the United States precludes a later suit against the federal employee. 28 U.S.C. § 2679(b)(1). The express prohibition on a suit against the employee following judgment in a suit against the United States—coupled with the absence of any bar on litigation against the United States following a judgment in favor of an employee—has led one court of appeals to conclude that the latter sequence is proper. *Ting v. United States*, 927 F.2d 1504, 1513 n. 10 (9th Cir.1991); cf. *Serra v. Pichardo*, 786 F.2d 237 (6th Cir. 1986). These decisions do not discuss the law of issue preclusion. Now that the question has been presented squarely, we hold that a decision in the employee's favor is not automatically preclusive in the United States' favor. A party who wants to raise different legal theories of liability against the same defendant must present all in a single case. *Herrmann v. Cencom Cable Associates, Inc.*, 999 F.2d 223 (7th Cir.1993). But when sequential suits name different parties, only issues actually and necessarily decided in the first case carry over to the second under the doctrine of issue preclusion. Judge Caldwell's finding that Sterling's escape cost him his chance under *Bivens* does not establish against Sterling any issue pertinent to the FTCA case, which therefore must be reinstated. The judgment is vacated, and the case is remanded for further proceedings consistent with this opinion.

FLAUM, Circuit Judge, concurring in the judgment.

I concur with the majority's result, but I write separately because I am unable to adopt its analysis.

The issue in this case is whether Sterling's current FTCA suit is precluded by the judgment in the previous, official-capacity civil rights action that he brought against Officer Miller (*Sterling I*) concerning the same transaction—the loss of his duffel bag. There can be no dispute that in *Sterling I*, Sterling sued Miller in *both* his individual and official capacities. On the first page of the complaint in *Sterling I*, it is clearly stated that the defendant is sued in both capacities. See R. 15, Government Exhibit 1. Our case law requires a civil rights plaintiff to designate whether a government official is sued in his individual or official capacity, *see Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir.1991); *see also Kolar v. County of Sangamon*, 756 F.2d 564, 568–69 (7th Cir.1985), and for good reason: an individual-capacity suit seeks "to impose personal liability upon a government official," *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985), whereas an official capacity action against a government employee is essentially a suit against the government entity itself. *Id.* at 165–66, 105 S.Ct. at 3105; *Monell v. Department of Social Services*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2036 n.55, 56 L.Ed.2d 611 (1978). Whether the suit is an individual or official capacity action determines who (the individual officer or the government) is responsible for satisfying any judgment that the plaintiff might win. See *Hill*, 924 F.2d at 1372. *Hill* thus imposes a duty on the plaintiff to frame his complaint accordingly, and I believe that we must defer to Sterling's characterization of his own lawsuit as *both* an individual and an official capacity action.

Because an official-capacity suit against a government official is essentially a suit against the government itself, we have held that for claim preclusion purposes, the government is in privity with officers sued in their official capacities. *Gray v. Lacke*, 885 F.2d 399, 405 (7th Cir.1989), *cert. denied*, 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613

(1990); *Beard v. O'Neal*, 728 F.2d 894, 897 (7th Cir.), *cert. denied*, 469 U.S. 825, 105 S.Ct. 104, 83 L.Ed.2d 48 (1984); *Lee v. City of Peoria*, 685 F.2d 196, 199 n. 4 (7th Cir. 1982).[1] Under the rule of *Gray, Beard,* and *Lee*, the current suit appears to be precluded by the official-capacity action in *Sterling I.* This, at least, was the reasoning adopted by the district court.

What complicates this case, however, is that the official-capacity action in *Sterling I* was doomed from the start. In his suit against Miller, Sterling sought money damages only. Because any award would come from the United States treasury, plaintiffs may not recover monetary damages in official-capacity actions against federal employees unless the United States has waived its sovereign immunity. *See,* e.g., *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d Cir.1994).[2] There was no waiver of sovereign immunity that authorized the official-capacity damages claim in *Sterling I.* Moreover, when there has been no waiver of sovereign immunity, a court does not have subject-matter jurisdiction to entertain a damages action against the United States. *In re Glacier Bay,* 71 F.3d 1447, 1450 (9th Cir.1995); *Wilkerson v. United States,* 67 F.3d 112, 118 (5th Cir.1995). Thus, the official-capacity portion of *Sterling I* should have been dismissed instantly, and the dismissal for lack of subject-matter jurisdiction would have no preclusive effect (except as to the issue of subject-matter jurisdiction itself). *Magnus Electronics, Inc. v. La Republica Argentina,* 830 F.2d 1396, 1400 (7th Cir. 1987); *Lacks v. Fahmi,* 623 F.2d 254, 256 (2d Cir.1980) (dismissal on ground of sovereign immunity has no "res judicata or collateral estoppel effect" as to the merits of the case).[3]

Regardless, however, of what *should have* happened, the district court *did not* dismiss the official-capacity action in *Sterling I* for lack of subject matter jurisdiction. Instead, the court assumed jurisdiction and dismissed the entire suit on the merits under Fed. R.Civ.P. 41(b). Because there was a dismissal on the merits, the elements of claim preclusion appear to be satisfied.[4] The question thus becomes whether we should give effect to the dismissal on the merits even though the court erroneously assumed subject-matter jurisdiction over the official-capacity damages claim.

A litigant may not collaterally attack a prior judgment by simply arguing that it is incorrect. *Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981). In addition, a judgment is generally given preclusive effect even if it was entered in the absence of subject-matter jurisdiction. *See Insurance Corp. of Ireland, Ltd. v. Compagnie des*

1. Privity does not exist, however, between the government and an officer sued solely in his individual capacity. *Charles Koen & Associates v. City of Cairo,* 909 F.2d 992, 999 n. 7 (7th Cir.1990); *Gray,* 885 F.2d at 405. The distinction that we have recognized between the preclusive effects of individual and official capacity suits against government employees appears to conflict with the approach of the Restatement, which establishes a general rule that employers are in privity with their employees. See Restatement (Second) of Judgments § 51 and cmt. a (ALI 1982). *Charles Koen* and *Gray* thus implicitly reject § 51, at least with regard to individual capacity suits against government employees.

2. Sovereign immunity does not, however, bar a plaintiff from obtaining specific relief in an official-capacity action when it is alleged that a government official violated the constitution or acted outside of his statutory authority. *See Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 689–90, 69 S.Ct. 1457, 1461–62, 93 L.Ed. 1628 (1949); *Clark v. Library of Congress,* 750 F.2d 89, 102 (D.C.Cir.1984).

3. A few courts have held that a dismissal on sovereign immunity grounds operates as a dismissal on the merits for res judicata purposes. *See Flores v. Edinburg Consolidated Independent School Dist.,* 741 F.2d 773, 775 n. 3 (5th Cir. 1984) (applying Texas law); *Kutzik v. Young,* 730 F.2d 149, 151 (4th Cir.1984) (applying Maryland law); *Bloomquist v. Brady,* 894 F.Supp. 108, 116 (W.D.N.Y.1995). This understanding conflicts with our statement in *Magnus* that "[a] judgment dismissing a suit for lack of jurisdiction does not preclude a party from litigating the same cause of action in *a court of competent jurisdiction.*" *Magnus,* 830 F.2d at 1400 (emphasis in original).

4. For claim preclusion to apply, three elements must be present:

(1) there must be a final judgment on the merits; (2) the two suits must arise out of the same transaction or occurrence; and (3) both actions must involve the same parties or their privies. *Doe v. Allied–Signal, Inc.,* 985 F.2d 908, 913 (7th Cir.1993).

*Bauxites de Guinee,* 456 U.S. 694, 702 n. 9, 102 S.Ct. 2099, 2104 n.9, 72 L.Ed.2d 492 (1982); *Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 377–78, 60 S.Ct. 317, 320, 84 L.Ed. 329 (1940); *Disher v. Information Resources, Inc.,* 873 F.2d 136, 139–40 (7th Cir.1989); *Commodities Export Co. v. United States Customs Service,* 957 F.2d 223, 228 (6th Cir.), *cert. denied,* 506 U.S. 831, 113 S.Ct. 96, 121 L.Ed.2d 56 (1992); *United States v. Chambers,* 922 F.2d 228, 239 (5th Cir.1991); *Kock v. Government of Virgin Islands,* 811 F.2d 240, 243 (3d Cir.1987); *cf. Durfee v. Duke,* 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963). This salutary approach exists because there is a need for finality in the law, and finality would be disserved if courts had to reexamine the jurisdictional basis of every prior judgment before giving it preclusive effect.

There are, however, a few exceptions to the rule that a court's decision to exercise subject-matter jurisdiction is not open to collateral attack.[5] For instance, if a state court takes jurisdiction over a claim that is exclusively within the province of the federal courts, its judgment is not entitled to preclusive effect. *See Kalb v. Feuerstein,* 308 U.S. 433, 439, 60 S.Ct. 343, 346, 84 L.Ed. 370 (1940) (state court judgment entered in violation of Bankruptcy Act not entitled to preclusive effect); *Gonzales v. Parks,* 830 F.2d 1033, 1036 (9th Cir.1987). In addition, the Supreme Court has held that a judgment is afforded no res judicata effect if the claim should have been dismissed on the ground of sovereign immunity. *United States v. United States Fidelity & Guaranty Co.,* 309 U.S. 506, 514, 60 S.Ct. 653, 657, 84 L.Ed. 894 (1940); *see also Blinder, Robinson & Co. v. SEC,* 837 F.2d 1099, 1104 (D.C.Cir.), *cert. denied,* 488 U.S. 869, 109 S.Ct. 177, 102 L.Ed.2d 146 (1988). The facts of *USF & G* are similar to the case here: a district court assumed jurisdiction over a claim that it should have dismissed because of sovereign immunity. *USF & G,* 309 U.S. at 512–13, 60 S.Ct. at 656–57. The *USF & G* Court held that the prior district court judgment was not entitled to preclusive effect. *Id.* at 514–15, 60 S.Ct. at 657–58. It may be noteworthy that the prior decision at issue in *USF & G* was a money judgment *against a sovereign,* and granting preclusive effect to that judgment would have resulted in an abrogation of sovereign immunity. *See id.* at 515, 60 S.Ct. at 657–58.[6] In contrast, the decision in *Sterling I* was *in favor of* the United States, so there is no fear of preclusion resulting in a money judgment against the treasury. This appears to be a matter of first impression, but I believe that the principle recognized in *USF & G* should apply both ways: if the government cannot be penalized for a court's assumption of jurisdiction in a case that should have been dismissed because of sovereign immunity, the government should not be able to benefit from it either. If a court reaches the merits of a claim that is barred by sovereign immunity, the judgment is simply void.[7] Thus, I agree that the judgment

---

**5.** The Restatement identifies three such exceptions:

> When a court has rendered a judgment in a contested action, the judgment precludes the parties from litigating the question of the court's subject matter jurisdiction in subsequent litigation except if:
>
> (1) The subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority; or
>
> (2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government; or
>
> (3) The judgment was rendered by a court lacking capability to make an adequately informed determination of a question concerning its own jurisdiction.

Restatement (Second) Judgments § 12 (ALI 1982).

**6.** Such a judgment may be void under § 12(2) of the Restatement because it "infringe[s] the authority" of a sovereign.

**7.** If the question of sovereign immunity was actually litigated in the original suit, the parties may be precluded from relitigating the issue in a subsequent proceeding. *See Durfee v. Duke,* 375 U.S. 106, 111, 84 S.Ct. 242, 245, 11 L.Ed.2d 186 (1963) ("a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment"); *In re Penn Central Transportation Co.,* 384 F.Supp. 895, 954 (Sp.Ct.R.R.R.A. 1974) ("We doubt that the [*USF & G*] case eliminates the application of collateral estoppel when the suability of the sovereign is at issue.... It is not certain that the result [in *USF & G*] would have been the same if a challenge to

in *Sterling I* should not preclude Sterling's current suit.

Finally, I do not believe that the Westfall Act (and the plain language of the text speaks for itself) authorizes Sterling to bring sequential suits. Since I agree, however, that *Sterling I* does not preclude the instant suit, I concur in the judgment of the court.

the jurisdiction of the [original] Missouri court had been made and erroneously overruled and the decision had not been appealed."). In *Sterling I*, however, as in *USF & G*, the question of sovereign immunity was never litigated. In addition, the court's failure to dismiss Sterling's official-capacity damages claim on sovereign immunity grounds was plainly erroneous. *USF & G* implies that in such situations, the judgment on the merits is void.