94 F.3d 647
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Louis A. CSOKA, Plaintiff-Appellant,
v.
UNITED STATES GOVERNMENT, et al., Defendants-Appellees.
 No. 94-1204.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 19, 1996.*
Decided Aug. 12, 1996.
Rehearing Denied Sept. 19, 1996.
 
 Before POSNER, Chief Judge, and ROVNER and EVANS, Circuit Judges.
 
 ORDER
 
 1
 Louis A. Csoka appeals the dismissal of his action pursuant to § 1983 and other federal statutes against two federal judges, various attorneys, Amoco Oil Co. ("Amoco") and its employees ("Amoco defendants"), Oil, Chemical and Atomic Workers, Int'l, Local 7-1 ("OCAW"), and various union officials ("union defendants"). He claims on appeal that the district court failed to liberally construe his expansive complaint. We affirm the dismissal of the complaint with respect to the judges and the attorneys. The district court's dismissal in favor of the Amoco defendants and the union defendants actually operated in part as an award of summary judgment. To the extent that this conversion was itself an error, it was harmless. We affirm the dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) in part and award of summary judgment in part on modified grounds. Finally, Csoka's complaint is peppered with references to various state laws. Because the federal claims have all been disposed of, supplemental jurisdiction will not be extended over any state law claims.
 
 
 2
 I. History.
 
 
 3
 Over the years, Csoka's original dispute with Amoco has amassed over twenty defendants, including Amoco employees, union officials, attorneys and state and federal judges. In describing the evolution of this dispute, some of the following facts have come from Csoka's complaint, while others have come from the record. According to the complaint, Csoka alleges that his problems began in December 1985, when Amoco began to discriminate against him on the basis of age and physical handicaps. Then in 1987, H. Nasif Mahmoud filed suit on Csoka's behalf against Amoco in federal district court. Csoka alleged that he had been discriminated against on the basis of age from 1982 to 1986, leading to his taking forced sick leave in 1986. On January 23, 1989, Judge Rudy Lozano dismissed this suit, H87-727, with prejudice pursuant to a stipulation between the parties.
 
 
 4
 While H87-727 was pending in 1988, Mahmoud filed another suit in state court on Csoka's behalf against Amoco, OCAW, Rudolph Oberman, who was then OCAW's president, and the local union representative, Mark Neil. Csoka claimed that Amoco's discrimination on the grounds of age and physical handicaps resulted in his being placed on long-term disability, and he alleged that Amoco and the union conspired to not pursue his grievances arising from such conduct. It appears that this case was removed to federal court and assigned the district court docket number H88-169. After a dispute over fees and Mahmoud's alleged refusal to provide an itemized bill for the thousands of dollars of services that had already been rendered, Csoka and Mahmoud parted company. On October 10, 1988, Csoka obtained the services of Deputy District Attorney William H. Walden to represent him in the federal litigation. Csoka also alleges that Judge Charles Graddick, a city judge in Indiana, agreed to help Walden litigate the case in federal court. Walden signed a stipulation with Amoco's attorney, Joel C. Levy, who then was a partner in the firm of Singleton, Levy and Crist, and an attorney representing the union to dismiss H88-169 with prejudice. Judge Lozano entered judgment accordingly on February 10, 1989.
 
 
 5
 In December 1989, Csoka returned yet again to federal court to file another suit, No. H89-446, against Amoco, the union and Oberman. Csoka claimed that he had attempted to return to work in 1988, but had been harassed and denied transfer to a less physically challenging job, which forced him to retire. (Csoka's current employment status with Amoco is unclear.) The complaint for H89-446 also included claims against Walden, Levy and Levy's law firm, Singleton, Levy and Crist, for allegedly conspiring to dismiss H88-169 without his consent. Judge James Moody, the district court judge presiding over H89-446, dismissed the case without prejudice, reinstated it and then dismissed it again pursuant to Rule 12(b)(6) without specifying whether the dismissal was with or without prejudice. Csoka then filed a motion for leave to file another suit elaborating on his claims. Judge Moody effectively treated the motion as one to amend the complaint in H89-446 without first seeking relief from judgment pursuant to Federal Rule of Civil Procedure 60(b). On August 6, 1991, recognizing that Csoka might have reasonably thought the second dismissal was also without prejudice, Judge Moody reviewed the amended complaint and denied the motion because the complaint lacked merit.
 
 
 6
 During and after the pendency of H89-466, Csoka hired two more sets of lawyers. First, Csoka obtained the services of Nels A. Kompier and R. Cordell Funk to sue Mahmoud for malpractice and to help with the Amoco litigation. Kompier and Funk parted with their client thereafter. Funk allegedly copied Csoka's files and refused to return some of them. Csoka also contends that Funk is married to Judge Moody's secretary and that his dispute with Funk resulted in the judge being biased against him. At some point, Csoka found another attorney, Jack Lund. The complaint is unclear as to when Lund was retained, but the record contains a fee agreement dated May 26, 1990. According to the sketchy allegations in the complaint, Lund promised to obtain the help of some other unknown attorney, received a retainer, asked for more money and failed to return some of Csoka's files.
 
 
 7
 On May 14, 1993, Csoka filed the action that is the subject of this appeal. As before, Csoka sued Amoco, OCAW, Oberman, Walden and Levy. He added Mahmoud, various Amoco employees, Robert E. Wages, who had taken over Oberman's position as president of OCAW, the board of directors of OCAW, Judge Lozano, Judge Moody, Judge Graddick, Singleton, Crist, Funk, Kompier, Lund and the United States government. The district court dismissed the judges and the deputy prosecutor on grounds of immunity, and it dismissed the attorneys due to the absence of state action. It granted the Amoco defendants' motion to dismiss because the complaint failed to state a claim under § 1983 and on res judicata grounds. Finally, it dismissed the claims against the union defendants on statute of limitations grounds.
 
 
 8
 The statute of limitations is an affirmative defense. A plaintiff is not required to negate an affirmative defense in his complaint. However, "if he pleads facts that show his suit is time-barred or otherwise without merit, he has pleaded himself out of court." Tregenza v. Great American Communications Co., 12 F.3d 717, 718 (7th Cir.1993), cert. denied, 114 S.Ct. 1837 (1994). For example, if Csoka's complaint, construed in his favor, demonstrates that Csoka failed to file his complaint within the relevant limitations period after he knew or had reason to know of his injury by a particular defendant, the § 1983 claim is subject to dismissal. Hondo, Inc. v. Sterling, 21 F.3d 775, 777-78, 781 (7th Cir.1994) (affirming Rule 12(b)(6) dismissal of § 1983 claim on statute of limitations grounds). Csoka erroneously contends that § 1983 has no statute of limitations. A § 1983 action is subject to the statute of limitations for personal injury claims in the state in which the alleged injury occurred. In this case, the statute of limitations derives from Indiana's two year limitations period for personal injury claims. Id. at 778. Dismissal of a claim on this basis is not appropriate if the complaint does not allege facts demonstrating the expiration of the statute of limitations. If the district court goes beyond the complaint to rely on evidence in the record, thereby converting the motion to dismiss into one for summary judgment, the plaintiff is entitled to advance notice. Bohac v. West, 85 F.3d 306, 312 (7th Cir.1996).
 
 
 9
 II. Federal Judges and the United States.
 
 
 10
 According to the complaint, the United States government, through the actions of the United States Supreme Court, violated Csoka's rights to due process, to petition for redress of his grievances and to trial by jury by denying him his day in court. Judge Lozano allegedly dismissed Csoka's case without his consent in violation of a state procedural rule, which is not applicable in federal court, and Judge Moody was allegedly biased against him because of his dispute with Funk, the husband of the judge's secretary.[1] The portions of the complaint that concern these two judges do not expressly cite any constitutional authority, but to the extent that Csoka might also allege constitutional claims for damages, the district court properly dismissed such claims. Csoka's damage claims against Judge Lozano and Judge Moody in their individual capacities due to constitutional deprivations are properly considered Bivens actions. See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). They are barred by the doctrine of judicial immunity. Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 433 n. 5 (1993) (judicial immunity in Bivens context often treated in same manner as in § 1983 actions); Mireles v. Waco, 502 U.S. 9, 11-12 (1991) (judicial immunity in § 1983 context). The suits against the judges in their official capacities are effectively suits against the United States government itself. Such suits for damages, whether against the judges in their official capacities or against the government directly, are barred by the doctrine of sovereign immunity.[2]
 
 
 11
 III. The Attorneys.
 
 
 12
 Csoka alleges in his complaint that Deputy District Attorney Walden conspired with City Judge Graddick, Levy, Singleton and Crist to violate his constitutional rights by dismissing his federal cases before Judge Lozano. It seems that the district court inferred from the complaint that Walden and Graddick had been acting in their official capacities. Thus, it found that Walden and Graddick were immune to suit for damages in their official capacities under the Eleventh Amendment and in their personal capacities under the respective doctrines of qualified immunity and judicial immunity. The court dismissed the other attorneys allegedly involved in this conspiracy because they did not act under color of state law, which is a necessary element of a § 1983 claim. Cf. Briscoe v. LaHue, 460 U.S. 325, 329 n. 6 (1983) (counsel does not act under color of state law by representing client). This basis for dismissal in favor of some of the attorneys may have been inappropriate if Csoka successfully alleged a conspiracy between state actors and such private individuals to achieve a common unconstitutional goal. Id. at 330 n. 7; Starnes v. Capital Cities Media, Inc., 39 F.3d 1394, 1397 (7th Cir.1994). On the other hand, a conspiracy among individuals not acting under color of state law is not actionable under § 1983.[3] Based on the allegations in the complaint, it is doubtful that Graddick and Walden were acting under color of state law when they represented private clients in federal court. Cf. Gibson v. City of Chicago, 910 F.2d 1510, 1516 (7th Cir.1990) (pointing out that defendant's "mere status as a policeman does not render all of his acts under color of state law."). However, even if we infer from the complaint that these defendants sold their services as litigators with the promise of clothing Csoka's private interests with the power and prestige of their state offices, cf. Harris v. Harvey, 605 F.2d 330, 337 (7th Cir.1979) (holding that use of power and prestige of office by state court judge in out-of-court campaign against plaintiff constituted action under color of state law), cert. denied, 445 U.S. 938 (1980), it is clear from the complaint that any § 1983 claims against the conspirators not barred by immunity would be barred by the statute of limitations.[4]
 
 
 13
 The court properly dismissed the § 1983 claims against the other attorneys. The complaint fails to allege action under color of state law on the part of either Kompier and Funk, who allegedly conspired together, or Lund and Mahmoud.
 
 
 14
 IV. Amoco Defendants and Union Defendants.
 
 
 15
 When the district court dismissed the Amoco defendants and the union defendants in part on res judicata and statute of limitations grounds respectively, it relied on evidence outside of the complaint. Both sets of defendants warned Csoka that failure to respond to their dismissal motions with evidentiary materials as described in Rule 56(e) might result in summary judgment against him. See Lewis v. Faulkner, 689 F.2d 100 (7th Cir.1982). Csoka responded to both motions with evidence or citations to evidence in the record.[5] Csoka himself has not objected to the lack of notice. We find that the district court's failure to notify Csoka that it was converting the motions to dismiss into summary judgment motions was harmless.
 
 
 16
 The district court properly dismissed the § 1983 claims against the union defendants and the Amoco defendants. To the extent that the complaint implies that they might have been part of the alleged conspiracy to dismiss the actions pending before Judge Lozano, the statute of limitations on such claims expired before the filing of this complaint. Any other § 1983 claims against these defendants fail to state a claim due to the absence of the element of action under color of state law.
 
 
 17
 The district court construed part of the complaint as a hybrid action against the union and Amoco for breaches of the duty of fair representation and of the collective bargaining agreement. Although the complaint largely appears to target the union in this hybrid action, see DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 165 (1983), Csoka argues on appeal that he also states a claim against Amoco based on alleged violations of the collective bargaining agreement. Regardless, the applicable six month statute of limitations bars suit against both Amoco and OCAW. Id. at 154, 172. Most of the alleged violations occurred years before the filing of this suit. Even if the hybrid suit encompasses the actions of Wages, Oberman's successor, the suit is still untimely. In 1992, Csoka contacted Wages and requested his help in gaining relief under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq.[6] On August 27, 1992, Wages wrote Csoka to tell him that he would take no further actions on his behalf. On September 3, 1992, William Phillips, the president of OCAW Local 7-1, who had sought negotiations with Amoco concerning the possibility of reinstatement, likewise ended his involvement. (Phillips is not a defendant in this case.) These events occurred more than six months before the complaint was filed in May 1993.
 
 
 18
 Csoka claims that OCAW, the board of directors and former president Oberman violated the "Bill of Rights" of members of labor organizations, 29 U.S.C. § 411(a)(4) (protection of right to sue), by having his complaint dismissed. See 29 U.S.C. § 412 (granting district courts jurisdiction over such suits). Csoka raised this claim in his suit against OCAW and Oberman before Judge Moody, and he is precluded from raising it again. Csoka's complaint also alleges that Wages violated § 411, but he has not pursued this claim on appeal. Nor does he allege in his complaint that Wages limited his right to pursue relief in any court, before any administrative agency or from any legislator, which is the focus of § 411(a)(4). His § 411 claim against Vyt Lazauskas, an Amoco employee, fails for the same reasons.
 
 
 19
 On appeal, Csoka also attempts to raise age and handicap discrimination claims under Title VII, 42 U.S.C. § 2000e et seq., the Rehabilitation Act, 29 U.S.C. § 791 et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., against the Amoco defendants. Csoka is precluded from raising these claims against Amoco, since he attempted to pursue them in his motion to amend in H89-466 and they were dismissed for lack of merit. He also attempted to raise many of the same or similar issues in the suits before Judge Lozano. Although Csoka discussed the roles played by the other Amoco defendants (Michael Doerner, Michael Vanacker, Richard McGillivray, Ralph Phillip, Jack Graham, Vyt Lazauskas and Eric Weck) in his motion to amend the complaint in H89-466, there is no evidence in the record that they were actually defendants. Nonetheless, the district court found the claims against them barred by res judicata. This disposition might be correct. Claims that are subject to claim preclusion with respect to Amoco are also precluded with respect to others in privity with Amoco. Similarly, the other Amoco defendants might rely on the doctrine of issue preclusion to prevent Csoka from re-litigating any issues that were necessarily resolved against him in the prior suits. See Sterling v. United States, 85 F.3d 1225, 1227 (7th Cir.1996). However, instead of attempting to tease out the issues of privity or of issue preclusion with respect to each of these present or former employees, it is simpler to point out that these claims fail for other reasons.
 
 
 20
 On appeal, Csoka contends that his complaint sets forth a Title VII claim, which might well come as a surprise to the defendants since any allusion to Title VII as grounds for relief was indirect at best. Moreover, the complaint does not allege any sort of discrimination on the basis of "race, color, religion, sex, or national origin" that Title VII seeks to prohibit. 42 U.S.C. § 2000e-2. Regardless, to the extent that the other defendants are named because of an intent to obtain respondeat superior liability against Amoco, the claim effectively against Amoco itself is precluded. To the extent that he seeks individual liability against the other defendants, he fails to state a claim because Title VII does not impose individual liability against employees. Williams v. Banning, 72 F.3d 552, 555 (7th Cir.1995).
 
 
 21
 Csoka's ADEA claims against Amoco and its employees, to the extent that he names them in order to pursue a respondeat superior theory of recovery against Amoco itself, are precluded by prior judgments. To the extent that he seeks to recover against the employees in their individual capacities, his claims are also subject to dismissal. We have observed in the Title VII context that " '[c]ourts routinely apply arguments regarding individual liability to all three statutes [the ADA, the ADEA and Title VII] interchangeably.' " Id. at 553-54 (quoting United States Equal Employ't Opportunity Comm'n v. AIC Security Investigations, Ltd., 55 F.3d 1276, 1280 (7th Cir.1995)). The ADEA, like Title VII, does not authorize individual liability claims against these employees.[7]
 
 
 22
 As for the Rehabilitation Act claims, Csoka relies on 29 U.S.C. § 794, which deals with discrimination against the handicapped in any program or activity receiving federal funding. However, the complaint contains no allegations concerning any such program. Amoco suggests that these claims might be construed as an attempt to pursue a private action under 29 U.S.C. § 793(a). Section 793(a) requires certain contracts with the government to contain provisions requiring the private contractor to take affirmative action in employing and advancing qualified handicapped individuals to carry out the contract. Csoka does not allege the existence of any such government contract. More to the point, we have held that this section does not provide a private cause of action in addition to the administrative enforcement provisions of § 793(b). D'Amato v. Wisconsin Gas Co., 760 F.2d 1474, 1484 (7th Cir.1985).
 
 
 23
 V. Supplemental Jurisdiction and Miscellaneous Issues.
 
 
 24
 The district court did not address the potential existence of state law claims. With no federal claims remaining, it is not appropriate in this case to retain supplemental jurisdiction over Csoka's amorphous state law claims concerning conspiracy, slander and so forth. These claims are dismissed for lack of jurisdiction.
 
 
 25
 Joel C. Levy and the Amoco defendants have requested sanctions against Csoka. Circuit Rule 38 permits an award of costs to the appellee in a frivolous appeal, which is defined as one " 'prosecuted with no reasonable expectation of altering the district court's judgment and for purposes of delay or harassment or out of sheer obstinacy.' " Stringel v. Methodist Hosp. of Indiana, Inc., 1996 WL 389351, slip op. at * 8 (7th Cir. July 12, 1996) (citation omitted). We must decide whether the appeal is frivolous and whether sanctions are appropriate in this case. Lorentzen v. Anderson Pest Control, 64 F.3d 327, 331 (7th Cir.1995), cert. denied, 116 S.Ct. 1423 (1996). This appeal is frivolous, but we do not find sanctions appropriate in this case. However, in the future, if Csoka continues to raise frivolous arguments in hopes of relitigating his prior claims, he may be subject to sanctions in the form of monetary damages, injunctive relief or both. Csoka's motion for the appointment of counsel is denied.
 
 
 26
 AFFIRMED IN PART, DISMISSED FOR LACK OF JURISDICTION IN PART.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f) (1995). Csoka has filed a statement requesting oral argument. Upon consideration of that statement, the briefs and the record, the request is denied, and the appeal is submitted on the briefs and record
 
 
 [1]
 Csoka cited 28 U.S.C. § 455 as grounds for relief, but has not raised this statute as grounds for relief on appeal
 
 
 [2]
 The Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq. ("FTCA"), provides a limited waiver of sovereign immunity for damages claims. Csoka has not attempted to rely on this provision for relief on appeal. Even if he had, the prospects of such claims are dubious. The FTCA requires exhaustion of administrative remedies. 28 U.S.C. § 2675. Although it is not clear whether exhaustion may be accomplished by reliance on the mandamus statute or only by seeking administrative relief pursuant to 28 U.S.C. § 372(c), some form of exhaustion of administrative relief is required before an FTCA claim may be filed against federal judges in federal court. McAfee v. 5th Circuit Judges, 884 F.2d 221, 223-224 (5th Cir.1989). According to the record, Csoka's most recent attempt to vindicate his rights prior to the filing of the complaint in this case was an unsuccessful mandamus action against Judge Moody. The Supreme Court denied certiorari in that case over a year before Csoka filed the complaint in this one. Even if this mandamus action represented an attempt to exhaust his administrative remedies with respect to Judge Moody, his FTCA claim would still fall prey to the six month statute of limitations on filing claims after denial by the agency. 28 U.S.C. § 2401(b) (requiring filing of claim with agency within two years after it accrues and filing action within six months after notice of final agency denial was mailed)
 
 
 [3]
 On appeal, Csoka attempts to bypass this problem with respect to various defendants by asserting that his complaint also states a claim under 42 U.S.C. § 1981 for age and handicap discrimination. The complaint contains no allegations of discrimination on the part of any of the defendants except for a few of the Amoco defendants. With respect to these defendants, we simply note that discrimination on the basis of either age or handicap does not fall within the province of § 1981. Anooya v. Hilton Hotels Corp., 733 F.2d 48, 50 (7th Cir.1984) (saying in dicta that § 1981 does not apply to age discrimination); Tafoya v. Bobroff, 865 F.Supp. 742, 752 (D.N.M.1994) (holding that § 1981 does not apply to discrimination on basis of disability), judg't aff'd, 74 F.3d 1250 (1996) (table); cf. D'Amato v. Wisconsin Gas Co., 760 F.2d 1474, 1486 (7th Cir.1985) (pointing out that discrimination against the handicapped did not constitute invidious class-based animus within meaning of § 1985(3))
 
 
 [4]
 On appeal, Csoka attempts to extend this conspiracy to include Judge Lozano. This attempt is futile. Apart from the statute of limitations problem, Judge Lozano, a federal judge, did not act under color of state law and did not agree to pursue the alleged conspiracy's unconstitutional objectives merely by granting the motion to dismiss. Dennis v. Sparks, 449 U.S. 24, 28 (1980); Starnes, 39 F.3d at 1397
 
 
 [5]
 One of these responses was filed after the district court effectively granted summary judgment. Csoka has not raised the district court's failure to await a response as error. Moreover, review of response and the materials it cites indicates that the omission was harmless
 
 
 [6]
 Csoka received a right to sue letter with respect to his ADA claim after filing his complaint. The district court subsequently denied leave to amend to include an ADA claim. On appeal, although Csoka obliquely refers to the ADA, he does not actually argue that denying leave to amend was reversible error. Cf. Fed.R.App.P. 28(a)(6). We note that the employment provisions of the ADA do not apply retroactively. DeVito v. Chicago Park Dist., 83 F.3d 878, 879 (7th Cir.1996) (holding that ADA does not apply retroactively to discriminatory conduct leading to discharge prior to July 26, 1992)
 
 
 [7]
 Stults v. Conoco, Inc., 76 F.3d 651, 655 (5th Cir.1996); Matthews v. Rollins Hudig Hall Co., 72 F.3d 50, 52 n. 2 (7th Cir.1995) (dicta); Thelen v. Marc's Big Boy Corp., 64 F.3d 264, 267 n. 2 (7th Cir.1995) (dicta); Smith v. Lomax, 45 F.3d 402, 403 n. 4 (11th Cir.1995); Miller v. Maxwell's Int'l, Inc., 991 F.2d 583, 587 (9th Cir.1993), cert. denied, 114 S.Ct. 1585 (1994); see also Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510-11 & n. 1 (4th Cir.) (holding that ADEA limits civil liability to employer in instances of personnel decisions of delegable character, although possibly not in other situations), cert. denied, 115 S.Ct. 666 (1994)